RYAN, APPELLEE, *v.* CONNOR, ADMR., APPELLANT.

[Cite as Ryan *v.* Connor (1986), 28 Ohio St. 3d 406.]

(No. 85-344—Decided December 30, 1986.)

*Connor & Koltak Co., L.P.A.,* and *Ronald J. Koltak,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Richard C. Slavin,* for appellant.

SWEENEY, J. The only issue presented by the instant case is whether physical injuries occasioned solely by emotional stress are compensable under the Ohio Workers' Compensation Act. Previously, in *Toth* v. *Stan-*

*dard Oil Co.* (1953), 160 Ohio St. 1 [50 O.O. 476], and *Szymanski* v. *Halle's, supra,* this court determined that physical disabilities caused solely by mental or emotional stress were not "injuries" within the meaning of the Act and, therefore, not compensable. In reaching this conclusion, the court effectively limited the payment of workers' compensation benefits to employees whose physical injuries resulted from a *physical impact or trauma.* As noted by Professor Arthur Larson, however, "[t]his * * * [was] a judicial limitation, since the statute defines injury as including *any injury* received in the course of and [arising] out of the employment. * * *" (Emphasis added.) 1B Larson, Law of Workmen's Compensation (1986) 7-591, fn. 39, Section 42.21(a).

Subsequent to the *Szymanski* decision, this court had occasion to review the effect of another "judicial limitation" upon the statutory definition of "injury" that is set forth in R.C. 4123.01(C). In *Village* v. *General Motors Corp.* (1984), 15 Ohio St. 3d 129, at 132, we recognized that, "under R.C. 4123.01(C), *any* injury received in the course of, and arising out of, the injured employee's employment is compensable [emphasis *sic*]," and we held that, in light of the plain language of the statute,[1] this court could no longer limit the payment of workers' compensation benefits for "injuries" only to those employees whose injuries were "the result of a sudden mishap occurring at a particular time and place * * *," *id.* at 131, as previously had been done in *Bowman* v. *National Graphics Corp.* (1978), 55 Ohio St. 2d 222 [9 O.O.3d 159].

Today, we again refer to the plain language of R.C. 4123.01(C) and apply the statutory directive that the Workers' Compensation Act "be liberally construed in favor of employees and the dependents of deceased employees," R.C. 4123.95, and we find no reasonable basis for continuing to judicially limit the payment of workers' compensation only to those employees whose physical injuries resulted from "contemporaneous physical injury or physical trauma." In the past, by enforcing this limitation and thereby precluding compensation to employees who have suffered a distinct physical injury as the result of a mental impact or stimulus, the Ohio courts have stood alone. As revealed by Professor Larson's review of the case law, the courts of other jurisdictions "uniformly find compensability" when job-related mental stress results in physical injury to an employee. 1B Larson, *supra,* at 7-586, Section 42.21(a).

In view of this overwhelming weight of authority from the other

---

[1] R.C. 4123.01(C) provides, in relevant part, that a compensable injury is "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." In *Village, supra,* we discussed the legislative intent behind this statutory definition of "injury" and explained that the phrase "whether caused by external accidental means or accidental in character and result * * *" was added by the General Assembly "to provide *examples* of compensable injury.* * *" *Id.* at 132.

jurisdictions that have recognized the compensability of stress-related injuries—without adversely affecting the stability of their respective workers' compensation systems—and in light of medical advances that have confirmed the direct link between mental stress and physical disabilities, it makes little sense to continue to impose a limitation on compensation that is not expressly set forth in Ohio's Workers' Compensation Act. We therefore hold that a physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C).

In reaching our conclusion and joining the mainstream of American jurisprudence on this issue, we are cognizant that the courts of other jurisdictions generally have not treated claims for stress-related injuries in the same fashion as claims for physical-contact injuries (*i.e.,* those resulting from physical impact or trauma). In that the causation of a physical-contact injury usually is more readily discernible than that of a stress-related injury, there is a reasonable basis for making this distinction. This does not mean that stress-related injuries are any less real or devastating to injured workers and their families or that claims for stress-related injuries should be given less credence, but it demands that recovery for stress-related injuries be linked to certain factors that may not be applicable to physical-contact injuries.

Because stress is experienced by every person in everyday life, it is necessary to define what kind of mental or emotional stress is legally sufficient to give rise to a compensable injury.[2] Much stress occurring in the course of, and arising out of, employment, is simply a result of the demands of functioning in our society, and participating in the work force, in and of itself, is a stressful activity. In order for a stress-related injury to be compensable, therefore, it must be the result of mental or emotional stress that is, in some respect, unusual. Over twenty years ago, the New York Court of Appeals developed a test that has since effectively been applied by the courts of a number of jurisdictions to determine whether the stress alleged to be the cause of a claimant's injury is legally sufficient to merit an award of workers' compensation. See Larson, *supra,* at Section 38.65(d). We, too, adopt this test and hold that in order for a stress-related injury to be compensable, the claimant must show that the injury resulted from " 'greater emotional strain or tension than that to which all workers are occasionally subjected * * *.' " *Wilson* v. *Tippetts-Abbott-McCarthy-Stratton* (1964), 22 App. Div. 2d 720, 721, 253 N.Y. Supp. 2d 149, 150. See, also, *Santacroce* v. *40 W. 20th St., Inc.* (1961), 10 N.Y. 2d 855, 222 N.Y. Supp. 2d 689.

Once a claimant has met this first test, he still must establish that the

---

[2] The necessity for drawing a distinction between legal causation and medical causation in claims involving stress-related injuries previously was discussed in *Village, supra,* at 135 (Holmes, J., concurring in judgment).

stress to which he (or claimant's decedent) was subjected in his employment was, in fact, the medical cause of his injury. In this regard, the claimant must show a substantial causal relationship between the stress and the injury for which compensation is sought. The claimant therefore must "show by a preponderance of the evidence, medical or otherwise, * * * that a direct or proximate causal relationship existed between * * * [the stress] and his harm or disability," *Fox* v. *Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472], paragraph one of the syllabus; or, when death benefits are sought, that the claimant's decedent's death was "accelerated by a substantial period of time as a direct and proximate result of the * * * [stress]." *McKee* v. *Electric Auto-Lite Co.* (1958), 168 Ohio St. 77 [5 O.O.2d 345], syllabus.

As properly noted by Justice Holmes, concurring in the judgment in *Village, supra,* at 135, "the factual issue of causal relationship is generally for the medical experts and the triers of fact," and "analysis must proceed on a case-by-case basis * * *," *id.* at 136. In the instant case, the trial court granted summary judgment to the appellants herein without reaching the issue of causation, but basing its decision on the ground that injuries occasioned solely by emotional stress are never compensable under the Ohio Workers' Compensation Act. We must remand the instant cause, therefore, so that the appellee's claim can be reviewed in light of today's decision, and all parties can fully litigate the issues discussed herein.[3]

Accordingly, the judgment of the court of appeals is affirmed and the cause is remanded to the common pleas court for further proceedings consistent with this opinion.

*Judgment affirmed.*

CELEBREZZE, C.J., C. BROWN and DOUGLAS, JJ., concur.

LOCHER, J., concurs in judgment only.

HOLMES and WRIGHT, JJ., dissent.

CLIFFORD F. BROWN, J., concurring. I applaud the sound reasoning and just result contained in Justice Sweeney's excellent majority opinion. The precedent established today has been long overdue.

I feel compelled to write separately to counter certain misconceptions and misstatements contained in the opinion of one of the dissenting justices. This dissent advances the clearly erroneous notion that the major-

---

[3] While the court of appeals relied on *Paugh* v. *Hanks, supra,* and *Schultz* v. *Barberton Glass Co., supra,* and analogized the tort principles therein to the instant case in reaching its conclusion, we find no need to make such an analogy. Today's decision thus is based expressly upon the Ohio Workers' Compensation Act and previous decisions applying the Act.

ity today, in reaching the conclusion that a work-related injury caused solely by stress is compensable, relied on this court's past decisions in *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, and *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131. I would challenge the reader of today's majority opinion to find anywhere in the body thereof a citation of, or allusion to, either of these cases. The only references to *Paugh* and *Schultz* are contained in our account of the *court of appeals' opinion,* which relied on those cases, and in footnote 3 *disavowing* our reliance thereon. Nowhere in this court's analysis of the issues presented herein do we even impliedly rely on *Paugh* or *Schultz*. The majority opinion of this court has been carefully formulated to rely only on relevant jurisprudence in the areas of workers' compensation rather than general tort law. The dissenter, for his own reasons, has blatantly mischaracterized the majority opinion in a feeble attempt to discredit it.

HOLMES, J., dissenting. The majority, in reaching its conclusion, is not merely liberally construing the law in favor of the claimant, but is again rewriting and enacting new law in the workers' compensation field.

Arriving at its novel position here, which overrules *Szymanski* v. *Halle's* (1980), 63 Ohio St. 2d 195 [17 O.O.3d 120], the majority, although by footnote denying such, incorrectly relies upon the law as pronounced in *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, and *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72. The author of the majority opinion also authored *Paugh,* the first sentence of which adopts the reasoning in *Schultz.* Those cases were tort actions based upon the negligence of the defendants, and were not claims compensable under the workers' compensation laws of Ohio. As stated by Judge Milligan in his dissenting opinion in the court of appeals: "There is a significant difference between recovery for serious emotional distress inflicted by the tortious conduct of another and compensation for serious emotional distress flowing from no fault, nontraumatic, conduct in the work place.* * *"

The law of Ohio has never by statute, and generally not by case law, allowed a recovery in a workers' compensation claim when the injury has not been one which has been occasioned by the worker's job-related duties. Compensable injury claims have historically been based upon trauma or conditions occurring while the employee was carrying out the duties of employment, or when the employee is found to be within the scope or sphere of his employment. Even the highly suspect opinion of *Littlefield* v. *Pillsbury Co.* (1983), 6 Ohio St. 3d 389, provided that the "special hazard" theory involved the employee's being placed at the position of hazard by way of his job duties. Here, the employee had his heart seizure not while he was at his place of employment, not while he was carrying out any of his assigned duties of employment, and not while he was in the scope or sphere of employment; the heart seizure was occasioned while he was acting on his own behalf and cutting limbs from trees on his own property.

The claimant argues that the injury or condition was one which was occasioned during the decedent's employment activities by way of a conversation between his employer and himself concerning retirement, and that such trauma continued to develop and grow within his psyche until the mental or emotional stress resulted in the heart seizure.

The claimed physical injury here is not compensable under R.C. 4123.01(C). Prior to *Village* v. *General Motors Corp.* (1984), 15 Ohio St. 3d 129, the decisions of this court required that a compensable injury must not only be work-related, but also "accidental." In *Bowman* v. *Natl. Graphics Corp.* (1978), 55 Ohio St. 2d 222 [9 O.O.3d 159], the court held that a disability which developed gradually over a period of time lacked the essential features of suddenness, unexpectedness and unforeseeability, as the court interpreted the requirements of R.C. 4123.01(C). In *Village*, this court overruled *Bowman* and held at 132-133 that an employee or his dependents do not lose entitlement to benefits "merely because the onset of his *work-related injury* was gradual, rather than sudden. We believe that the judicial distinction between gradual and abrupt causation is unjustified. It frustrates the purpose of the Act, which is to compensate workers who are injured *as a result of the requirements of their employment*." (Emphasis added.) The syllabus law in *Village* is that "[a]n injury which develops gradually over time *as the result of the performance of the injured worker's job-related duties* is compensable under R.C. 4123.01(C)." (Emphasis added.)

I concurred in the judgment in *Village* because I have felt for some time that recovery for job-related disabilities should not be limited by the "sudden mishap" test. Accordingly, as a member of the panel of the Tenth District Court of Appeals which decided *Bowman*, prior to its being appealed to this court, I voted in favor of allowing compensation for an employee who had received an injury while handling heavy rolls of print shop paper over a period of months. *Bowman* v. *Natl. Graphics Corp.* (1977), Franklin App. No. 77AP-173, unreported.

My position as expressed in the *Bowman* opinion at the court of appeals level, and stated again in *Village*, was that: "An accidental injury need not result suddenly from the immediate application of external force. It has been my position that injuries may be accidental although the definite time of their beginning is not precisely determined. The onset of disability may be somewhat gradual and progressive, and the ultimate injury may result from the *cumulative impact of activities occurring in employment* which operate on the employee's body or a particular physical weakness." (Emphasis added.) *Village, supra,* at 135.

Also in *Village,* I agreed that in a given case a gradual work-related condition might be compensated where the legal causation, as well as the medical causation, factors of the injury could be established by expert testimony. In this regard I noted that heart attacks occasioned by working activities such as severe muscular strains could be compensable under the

statute. Additionally, I hypothesized that a cause might be stated where the employment or job-related activities brought on conditions of "worry, frustration, overwork, anxiety, and other stressful conditions." *Village, supra,* at 135.[4]

In *Bowman* and *Village,* the conditions were bodily injuries, not stressful or emotional in nature, and the claims and proof were for compensation for such injuries that were received within the activities of the jobs of the employees and within the duties and responsibilities assigned to them. Therefore, in all of the above claims, it was alleged and proven that the condition arose out of the activities of the job and in the course of employment. The necessary elements to be alleged and proven are that the injury here (heart seizure) arose from conditions in the course of employment, and that there is a causal connection between the employee's injury and some unusual strenuous exertion, either physical or emotional, due to his occupational activities.

Here we are dealing with a claim based solely upon mental or emotional stress which I have previously acknowledged as actionable; however, rather than the claim being based upon on-the-job or working-condition stress, it is instead based upon emotional stress occasioned by mere conversations with the decedent's employer concerning retirement. It is to be expected that employees will be presented with various conversations which, while arising in the job environment, are not part of the job activity. Such discussions might concern changes in responsibility, promotion decisions, task definitions, early retirement, or hiring and firing decisions. These matters occur in the ordinary course of such relationships, and while related to job satisfaction, are hardly distinguishable from the ordinary experiences of most human beings. It is not, therefore, reasonable to assert that R.C. 4123.01 *et seq.* was ever contemplated as a basis for compensation when an employer and employee had the kind of discussion presented.

It is my view that in order for an injury of this nature ever to be compensable there must be a claim and proof that the stress or anxiety was occasioned by the work or duties of the employee, or the surrounding working conditions. In the present case, the complaint does not allege an injury which arose during the course of employment or was derived from job duties, for the actual physical injury occurred away from the job while

---

[4] This conclusion may be somewhat limited by the new definition of "injury" to be found within R.C. 4123.01(C) as set forth in Am. Sub. S.B. No. 307, effective August 22, 1986, which states that:

"* * * 'Injury' does not include:

"(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease;

"(2) Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body * * *."

the employee was engaged in a purely private task on his own property. The allegation that stress caused the injury cannot be legally cognizable when the alleged anxiety arose from a proposal that the employee retire. It is clear that his primary dissatisfaction was that he was not to be promoted, as well as a feeling that the terms of his retirement offer were not to his liking. Plainly, these concerns are not related to job duties, and were not intended to be the basis of a workers' compensation recovery.

By stretching the law to encompass the within claim, the majority has placed employers in a truly untenable position before the law. Their flexibility to negotiate a retirement package to a long-valued employee would perhaps be narrowed under the majority rule to summary notice by mail. Furthermore, the analysis of the majority asserts that prior decisions artificially "preclude[d] compensation to employees who have suffered a distinct physical injury as the result of a mental impact or stimulus * * *." This clearly misconstrues the issue before us, which is to determine whether the injury was caused by compensable activities. Since neither the injury nor the mental stress is job-related in the sense necessary under the statute, there should be no compensation.

Also, the standard enthroned by the majority, which measures the "greater emotional strain or tension than that to which all workers are occasionally subjected," is a far more imprecise measure than that utilized up to the present. The terms "all workers" and "occasionally subjected" are neither simple nor easily ascertainable. Likewise, the degree to which one experiences "emotional strain," *i.e.*, stress, during times of decision, is largely a matter of personal temperament. Because stress is subjectively experienced, it is usually not, by itself, readily ascertainable or quantifiable. While I have previously conceded that stress may harm the body and may be found to be compensable if occasioned by definite job activity, it must be pointed out that no method presently exists to separate the stress allegedly engendered by some occurrence at the place of employment from the concomitant strain of consequential, non-work-related anxieties which follow. Such vagueness unleashed can only result in a plethora of cases and claims, each with its own suggestion of how the new standard should be interpreted.

Accordingly, I dissent.

WRIGHT, J., dissenting. I must express my vigorous disagreement with the result reached today and the manner in which it was achieved. My reasons for this posture follow.

Today, the court judicially legislates a substantial change in the terms of R.C. 4123.01(C), despite a recent change in this statute which conflicts with the thrust of the majority decision. In addition, *Szymanski* v. *Halle's* (1980), 63 Ohio St. 2d 195 [17 O.O.3d 120], and *Toth* v. *Standard Oil Co.* (1953), 160 Ohio St. 1 [50 O.O. 476], are summarily overruled without any meaningful discussion whatsoever of any compelling reasons therefor. The

decision makes no mention of the doctrine of *stare decisis.* It was only six short years ago that this court decided *Szymanski,* in which we stated that "[d]isabilities occasioned solely by emotional stress without contemporaneous physical injury or physical trauma are not compensable injuries within the meaning of R.C. 4123.01(C)." *Id.* at syllabus. Finally, close analysis demonstrates that the majority's decision causes more problems than it solves, creating a Pandora's Box, packed with unintended consequences for the workers' compensation system.

The court below reasoned that workers' compensation claims predicated on mental stress are just as compensable as work-related fractures and lacerations. In reaching this remarkable conclusion, the court of appeals relied upon *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, and *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131. It is gratifying that we all agree with Judge Milligan in his dissent when he protested that:

"* * * There is a significant difference between recovery for serious emotional distress inflicted by the tortious conduct of another and compensation for serious emotional distress flowing from no-fault, non-traumatic, conduct in the work place.* * *"

No one—not the plaintiff, not the majority and not the court of appeals—suggests that notice of early retirement is in any way actionable under the workers' compensation scheme, or, for that matter, that the delivery of the notice in whatever form can be equated to the tortious misconduct alleged and rejected in *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100. However, we now conclude that employers may be subjected to death claims under the workers' compensation system based upon how an individual employee reacts to his dismissal or to an offer of early retirement.

The court below relied upon Justice Sweeney's dissent in *Szymanski* as authority for its result. While I respect Justice Sweeney's views, I believe his purpose was to extend an invitation to the General Assembly to remedy a perceived injustice. Today, the majority has withdrawn the invitation and "cured" the problem by judicial fiat. Moreover, recent action by the legislative and executive branches demonstrates that the "invitation" extended in the *Szymanski* dissent has been rejected.

Noticeably absent from the majority's opinion is any reference whatsoever to the recent overhaul of the Workers' Compensation Act contained within Am. Sub. S.B. No. 307. Pursuant to this recent amendment, the General Assembly has narrowed the definition of "injury" under R.C. 4123.01(C), as follows:

" 'Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. *'Injury' does not include:*

"(1) *Psychiatric conditions except where the conditions have arisen from an injury or occupational disease;*

"(2) *Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body * * *.*" (Emphasis added.)

That the aforementioned definition is simply a clarification of R.C. 4123.01(C) and in accord with the previous decisions in *Toth* v. *Standard Oil Co., supra,* and *Szymanski, supra,* is clear. See, also, *State, ex rel. Bunch,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 423, 428 [16 O.O.3d 449]; *State, ex rel. Boyd,* v. *Frigidaire Div.* (1984), 11 Ohio St. 3d 243, 244-245; *State* v. *Johnson* (1986), 23 Ohio St. 3d 127, 130-131.

In *Toth,* the claimant was employed as a truck driver for the Standard Oil Company when he was investigated by the Cleveland city police regarding a hit-skip death of a pedestrian. During the police investigation, the claimant suffered a stroke and partial paralysis. A claim was later filed with the Industrial Commission in which it was asserted that the stroke was caused by the claimant's highly nervous state and his extreme concern over the police investigation. In reversing an award of benefits, this court stated by way of syllabus law:

"1. The term, 'injury,' as used in the Ohio Workmen's Compensation Act, comprehends a physical or traumatic damage or harm, accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place. (*Malone* v. *Industrial Commission,* 140 Ohio St., 292 [23 O.O. 496], approved and followed.)

"2. Where an employee is subjected to investigation by police on suspicion that a truck driven by such employee injured a pedestrian, and such employee subsequently suffers partial paralysis from a cerebral hemorrhage claimed to be caused by anxiety and worry as a result of the investigation, such disability is not an 'injury' as defined in the Ohio Workmen's Compensation Act and is not compensable under its provisions."

Likewise, in *Szymanski* the claimant alleged that as a result of a verbal attack by fellow employees, she suffered a heart attack as well as mental distress. In concluding that the claimant had not alleged a compensable injury, the court stated in the syllabus that "[d]isabilities occasioned solely by emotional stress without contemporaneous physical injury or physical trauma are not compensable injuries within the meaning of R.C. 4123.01(C)."

The recent amendment to R.C. 4123.01(C) does nothing to offset, and in fact buttresses, the holdings in *Toth* and *Szymanski.* This is evident from the fact that psychiatric conditions, which certainly include stress and other emotional complications, are not, absent an accompanying physical injury or occupational disease, compensable. In addition, even if the stress triggers a myocardial infarction, no injury or disability is recognized if the organ was deteriorated to such an extent that the deterioration was the primary cause of the injury.

The majority conveniently overlooks the recent amendment and in-

stead concludes that stress *should be* compensable under the Workers' Compensation Act. What the majority *fails to consider*, and what the General Assembly *did comprehend,* are the far-reaching consequences of the rule espoused today. Many factors contribute to heart disease, including diet, lack of exercise, smoking, diabetes and family history. Yet, the majority invokes a rule that employers must ultimately be responsible for the personal health habits of their employees. What this position fails to comprehend is the practical effect today's decision will have on hiring practices in the marketplace. In order to circumvent the impact of this decision, employers will be reluctant to hire persons who are overweight or over fifty—two classes of individuals who can ill-afford further negative hiring practices. In addition, questions will surface on employment applications making inquiry about medical family history, including, but not limited to such factors as heart disease, stroke, hypertension and even ulcers. A prospective employee with higher than normal blood pressure will now encounter difficulties when seeking employment. These limited examples alone demonstrate that the proper forum for the consideration of stress, under the workers' compensation system, lies with the General Assembly and not this court.

The majority reasons that the Workers' Compensation Act should be "liberally construed." See R.C. 4123.95. I agree, but I do not believe that we should give the Act a tortured construction in the process. This court most certainly went a long way toward a "liberal construction" of the Act in *Oswald* v. *Connor* (1985), 16 Ohio St. 3d 38,[5] where the court reasoned that the misdiagnosis of an occupational disease, which allegedly accelerated a pre-existing heart condition due to depression and stress, which in turn caused a fatal heart attack, was compensable under the Act. Nevertheless, in *Oswald,* we did not sanction compensation for emotional stress without a contemporaneous physical injury or occupational disease which was contracted during the course and scope of the decedent's employment. Today's decision, which jettisons the requirement for physical injury prior to an award for stress-related complications, "* * * places an additional nail in the coffin of valid principles of workers' compensation law in Ohio.* * *" *Oswald, supra,* at 47 (Holmes, J., dissenting).

I am sorely tempted to postulate all of the not-so-imaginary horribles that could flow from this hastily drafted and result-oriented decision. However, I suspect that law journal authors, legislators and members of the executive branch will quickly be awakened to its frailties. Happily, the effect of this decision will be short-lived in light of the recent action of the General Assembly noted above.

---

[5] There is one bright spot in the majority opinion. *Sub silentio* the majority overrules *Oswald* v. *Connor, supra,* wherein the majority suggested that something less than reasonable medical probability or certainty is required with respect to a direct or proximate relationship between the accident or incident and the harm or disability. Cf. *Aiken* v. *Indus. Comm.* (1944), 143 Ohio St. 113 [28 O.O. 50].

Here we have a situation where a man has been subjected to some degree of stress which may have been a contributing factor to a fatal heart attack. I certainly can sympathize with anyone who has been subjected to continuing stress. However, is it good policy to judicially legislate a policy that obviates any possibility of defining such a claim? This claimant's death came within a few days of the alleged stress while working at his home. Are there *any* time frames which would preclude a death claim? Are there any limits left to the parameters of an employee's zone of employment? What have we really done as to death claims premised upon emotional distress arising out of dissatisfaction or boredom with one's job?

For the reasons noted, I respectfully dissent.

HOLMES, J., concurs in the foregoing dissenting opinion.

