THE STATE, EX REL. DUBIE, *v.* POLICE AND FIREMEN'S DISABILITY AND PENSION FUND.

(No. 86AP-202—Decided September 1, 1987.)

*Gibson & Robbins-Penniman* and *J. Miles Gibson,* for relator.

*Ronald J. O'Brien,* city attorney, *Anthony J. Celebrezze, Jr.,* attorney general, and *Richard A. Green,* for respondent.

BRYANT, J. Relator, Diana L. Dubie, widow-claimant, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, the Police and Firemen's Disability and Pension Fund ("PFDPF"), to award her death benefits pursuant to R.C. 742.63, based upon the March 12, 1985 death of her husband, Patrolman Theodore R. Dubie, from a self-inflicted gunshot wound to the chest. The parties stipulated the evidence to be considered by the court, consisting of decedent's personal history record maintained by the PFDPF.

This matter was referred to a referee pursuant to Civ. R. 53(C) and Section 13, Loc. R. 11 of the Tenth Ap-

pellate District. The referee rendered a report and recommendation on March 26, 1987, including findings of fact and conclusions of law. In his report, the referee recommended that the writ of mandamus be denied. Neither relator nor respondent has filed objections to the referee's report.

As stipulated by the parties, relator's decedent was assigned to jail duty on a night when a prisoner hanged himself. Thereafter, having been threatened by various prisoners, relator's decedent indicated a fear for his family's safety and put an alarm system in his home. Relator's decedent began to complain of stress and anguish, and experienced pain in his stomach and arm. In May 1984, he suffered a heart attack at the age of twenty-seven, which relator claims was the result of work-related stress. Yet a second inmate's suicide caused relator's decedent further depression. He began to wear dark glasses day and night, and began to chain-smoke and drink alcohol. Moreover, he was sued as a result of one of the inmate's suicides, with claims against him in the amount of $5,000,000 compensatory damages and $10,000,000 punitive damages. Eventually, relator's decedent left relator and their child to live with another woman. He took his life by inflicting a gunshot wound to his chest with his own service revolver.

Relator contends that the respondent PFDPF abused its discretion in failing to find that the decedent died "from injuries sustained in the line of duty" under R.C. 742.63. Relator argues that the decedent sustained an emotional trauma as a result of his job-related stresses; that his becoming mentally ill in the line of duty ultimately led to his death by suicide.

The death benefits relator claims arise pursuant to R.C. 742.63, which states in pertinent part:

"(B) A spouse of a deceased member shall receive a death benefit each month equal to the full monthly salary received by the deceased member prior to the member's death * * * and shall also receive any increases in salary which would have been granted to the deceased, provided the spouse was married to the deceased member while the deceased member was in the active service of a fire or police department and the deceased member was a fireman or policeman *killed in the line of duty or who died of injuries sustained in the line of duty.* The spouse of such a deceased member shall receive this benefit during the spouse's natural life, until the earlier of the deceased member's retirement eligibility date or the spouse's remarriage, on which date the benefit provided under this division shall terminate.

"* * *

"(D) If a member *dies in the line of duty* as a fireman or policeman *or from injuries sustained in the line of duty* as a fireman or policeman, and is survived by both a spouse and a child or children, then the monthly benefit provided shall be as follows:

"(1) If there is a surviving spouse and one surviving child, then the spouse receives an amount equal to one-half of the full monthly salary received by the deceased member prior to the member's death, plus any increases in the salary which would have been granted to the deceased * * *." (Emphasis added.)

Accordingly, in order to recover death benefits pursuant to the foregoing, relator must show that first, the decedent sustained an injury in the line of duty, and second, that his death was from the injury sustained. As the referee noted, relator's claim appears to be one of first impression in Ohio. However, relator urges that, given the similarities in relator's claim to that asserted in workers' compensation

claims, we employ workers' compensation decisions as a guide to interpretation of R.C. 742.63. Even if we do so, we must conclude that relator is not entitled to the requested writ.

In examining this matter under a workers' compensation analysis, we must first determine whether relator's decedent sustained an injury in the line of duty. The recent Ohio Supreme Court case of *Ryan* v. *Connor* (1986), 28 Ohio St. 3d 406, 28 OBR 462, 503 N.E. 2d 1379, addressed the issue of a physical injury occasioned solely by mental or emotional stress received in the course of or arising out of an injured employee's employment. Therein, the court found such an injury compensable. However, at the same time, the court noted that "the claimant must show that the injury resulted from ' "greater emotional strain or tension than that to which all workers are occasionally subjected. * * *" ' " *Id.* at 409, 28 OBR at 465, 503 N.E. 2d at 1382. Applying the *Ryan* test to the facts before us, we may conclude that relator's decedent was subjected to a greater stress than all other workers by virtue of his connection to the suicides he encountered during his jail duty.

However, in addition to emotional stress, relator must show that the decedent's death was " 'accelerated by a substantial period of time as a direct and proximate result of the * * * [stress].' " *Id.* at 410, 28 OBR at 465, 503 N.E. 2d at 1382. In this matter, the board had before it the report of Omar Elazar, M.D., which stated:

"* * * I have reviewed the statements you sent me from Mr. Dubie's fellow police officers, regarding Officer *Theodore Dubie* (deceased). I also interviewed his widow, to gather additional background information about the case.

"It is my considered opinion that:
"I. Officer Theodore Dubie died from injury caused while in the line of duty.
"II. There is a real and measurable causal connection between the stress and his death.
"III. His death was the direct result of the performance of his police duties."

On its face the doctor's report is insufficient to establish the necessary causal connection under the *Ryan* test. The doctor does not elaborate as to what injury the decedent sustained in the line of duty, nor does he delineate the evidence obtained in his interview with relator on which he relies in rendering his opinion. In short, with such deficiencies, the board did not act unreasonably in apparently giving the doctor's report little weight.

Accordingly, relator has failed to demonstrate that the respondent abused its discretion or that relator has a clear legal right to the requested writ. We therefore adopt the recommendation of the referee and deny relator's request for a writ of mandamus.

*Writ denied.*

REILLY and YOUNG, JJ., concur.