OPINION
{¶ 1} The plaintiff-appellant, Richard R. Brown, appeals the January 25, 2002 verdict and judgment entry of the Common Pleas Court of Wyandot County, Ohio, finding that he was not entitled to participate in the workers' compensation fund.
 {¶ 2} Plaintiff was a teacher with the Upper Sandusky School District. On March 8, 1994, during a meeting with school superintendent Dr. James McGlamery, the plaintiff heard a ringing in his ear and began to feel ill. Later that afternoon, he was taken to a hospital and was diagnosed as having suffered a myocardial infarction, commonly known as a "heart attack." Plaintiff subsequently filed an application for workers' compensation benefits, asserting that he had a right to medical benefits because his myocardial infarction was the result of a work-related injury, precipitated by the stress he had endured from the meeting with Dr. McGlamery.
 {¶ 3} Plaintiff's claim for benefits was eventually denied by the Bureau of Workers' Compensation, and, pursuant to R.C. 4123.512, he timely filed a complaint and notice of appeal with the Court of Common Pleas of Wyandot County. Both the plaintiff and the defendants filed for summary judgment, and on November 15, 1999, the trial court denied the plaintiff's motion for summary judgment and granted judgment in favor of the defendants, the Ohio Bureau of Workers' Compensation and the Upper Sandusky Exempted Village School District. The plaintiff appealed that judgment to this Court. See Brown v. Upper Sandusky Schools (2000),139 Ohio App.3d 448. On October 13, 2000, this Court reversed the trial court's decision and held that the trial court's determination that the plaintiff did not present sufficient evidence that his injury "arose out of" his employment was erroneous. Id. at 452. In addition, this Court held that the plaintiff had presented evidence that his "heart attack occurred `in the course of' his employment sufficient to overcome a motion for summary judgment." Id. at 452-453.
 {¶ 4} This matter proceeded to a bench trial on October 10-12, 2002. On January 25, 2002, the trial court found in favor of the defendants, holding that the plaintiff was not entitled to participate in the benefits of the Workers' Compensation Fund. This appeal followed, and the plaintiff now asserts twenty assignments of error, one of which includes fifty assignments of error enumerated in the statement and praecipe to this Court.
 {¶ 5} Our review of this case begins by addressing Plaintiff's nineteenth assignment of error, which purports to incorporate the fifty assignments of error enumerated in the statement and praecipe to this Court. The Rules of Appellate Procedure require that an appellant provide a statement of the assignments of error he/she "intends to present on the appeal" and that the portions of the transcript that are ordered be described when only a partial transcript is ordered. App.R. 9(B). This Rule is designed to allow the appellee an opportunity to request that other portions of the transcript, which were not described by the appellant, be included in the record on appeal. See App.R. 9(B). This Court's local rules require that this statement be combined with the praecipe. Loc.R. 3(B). However, a statement of the assignments of error is unnecessary when a complete transcript is requested. In addition, "each assignment of error must be separately argued in the briefs[.]" Loc.R. 11(A). The briefs "shall not exceed twenty-five (25) pages in length, exclusive of the table of contents, assignments of error and appendix. Loc.R. 7(B).
 {¶ 6} The plaintiff filed a statement and praecipe in this case on February 19, 2001. The statement totaled thirty-one pages in length, contained a recitation of the facts, and listed fifty assignments of error, most of which were followed by some form of argument in support. Plaintiff then sought to incorporate these assignments of error in his brief to this Court by referring to them as the nineteenth assignment of error. However, many of these assignments of error mimicked those already contained in the first eighteen and the twentieth assignments of error. In addition, these fifty assignments of error were not separately argued in the appellate brief.
 {¶ 7} First, the statement containing these fifty assignments of error was unnecessary because the plaintiff requested a complete
transcript rather than a partial one. Second, the appellate rules do not provide that the assignments of error be argued in the statement. To the contrary, App.R. 9(B) requires a statement of the assignments of error that the appellant "intends to present on the appeal." Thus, when a statement is required by App.R. 9, the assignments of error are merely listed. The statement is not the proper place to argue these errors. Moreover, "[e]ach assignment of error must be separately argued in thebriefs" not the statement and praecipe. Loc.R. 11(A) (emphasis added). To permit the plaintiff to incorporate the assignments of error enumerated in the statement and praecipe, especially without supporting arguments in his brief to this Court, circumvents the maximum page limit of twenty-five pages allowed for briefs. Moreover, many of these fifty assignments of error are redundant and mimic the other nineteen assignments of error in the brief. Thus, this Court will not consider the arguments propounded in the statement and praecipe, and the nineteenth assignment of error is overruled.
 {¶ 8} As for the remaining nineteen assignments of error, many are repetitive or involve similar issues. Therefore, this Court will discuss the various assignments of error together according to the issues to which they pertain without separately enumerating all nineteen. The assignments of error can be grouped into the following four categories: (1) procedural errors; (2) the judgment was contrary to law; (3) the judgment was against the manifest weight of the evidence; and (4) the trial court was biased.
 Procedural Errors {¶ 9} The second, third, thirteenth, and fourteenth assignments of error involve allegations of procedural errors by the trial court. The plaintiff maintains that the trial court erred in determining that he withdrew his jury demand. On October 9, 2001, one day prior to trial, a withdrawal of jury demand was filed in this case. This document clearly reads: "THE PLAINTIFF WITHDRAWS HIS DEMAND FOR A TRIAL BY JURY IN THIS MATTER." Further, the document bears what appears to be the signature of the plaintiff. The plaintiff does not dispute that this signature is his or that he filed the withdrawal. Plaintiff cannot withdraw a jury demand and then complain that he was improperly denied a jury trial. Thus, this assertion lacks merit.
 {¶ 10} Plaintiff also contends that the trial court improperly quashed various subpoenas issued on his behalf. However, the subpoenas to which the plaintiff is referring are never addressed in the brief to this Court nor is any argument in support of the plaintiff's contention propounded. Local Rule 11(A) requires that each assignment of error "be separately argued in the briefs[.]" Thus, this contention also has no merit.
 {¶ 11} The plaintiff further asserts that the trial court allowed the defendants to violate the discovery deadline of September 10, 2001, by permitting the deposition of Dr. Ralph Lach to be taken on October 4, 2001, and admitted into evidence at trial in violation of Wyandot County Local Rule 23. The plaintiff filed his objection to Dr. Lach's deposition on October 4, 2001. However, Plaintiff based his objection to the deposition upon the credibility of Dr. Lach not upon a discovery deadline or rule violation. In addition, the plaintiff did not object to the deposition of Dr. Lach during the trial. In fact, rather than object to the admission of the deposition based upon the discovery deadline or rule violation, the plaintiff informed the trial court that he wanted to be present when the trial court watched the videotaped deposition and then chose not to appear in court at the time designated for viewing the deposition.
 {¶ 12} The Supreme Court has previously held "that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Childs (1968), 14 Ohio St.2d 56,61, citing State v. Glaros (1960), 170 Ohio St. 471, paragraph one of the syllabus. Thus, the plaintiff cannot assert any additional arguments for the first time at the appellate level. The plaintiff did not object to the deposition based upon Wyandot County Local Rule 23. Thus, the plaintiff cannot raise this issue now. Moreover, this deposition was not taken for discovery purposes, but rather as testimonial evidence from a witness pursuant to R.C. 4123.512(D), which allows a party in a workers' compensation action to file a deposition of a physician to be read at the trial of the action rather than be called as a witness during the trial. Therefore, these assertions have no merit. For these reasons, the second, third, thirteenth, and fourteenth assignments of error are overruled.
 The Judgment was Contrary to Law {¶ 13} In his first, fourth, and twentieth assignments of error, the plaintiff maintains that the trial court erred by not following this Court's decision in Brown v. Upper Sandusky Schools (2000),139 Ohio App.3d 448, wherein this Court held that genuine issues of material fact existed as to whether the plaintiff's injuries "arose out of" and occurred "in the course of" his employment. Specifically, the plaintiff contends that the trial court did not follow this Court's decision as to the integrity and validity of Dr. Kyle Park's affidavit. The affidavit of Dr. Park stated that the plaintiff had no pre-existing heart disease prior to his March 8, 1994 heart attack, that the heart attack and attack of Meniere's Disease was the direct and proximate result of the plaintiff's employment, and that the "apparent causal relationship was work related due to the highly unusual stress, anxiety, emotional strain and mental strain" placed on the plaintiff. This Court relied, in part, upon the affidavit of Dr. Park to find that the plaintiff presented evidence "sufficient to overcome a motion for summary judgment." Id. at 453.
 {¶ 14} Apparently, the plaintiff is under the assumption that our decision in the summary judgment matter conclusively established the validity of Dr. Park's statements in his affidavit and that the trial court had to accept the affidavit as credible. The plaintiff is incorrect in this assumption and seems to fail to understand the difference between the summary judgment phase of litigation and a trial on the merits.
 {¶ 15} When ruling upon a motion for summary judgment, a court must construe all evidence and decide any doubt in favor of the non-moving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360. In this case, the plaintiff was the non-moving party, and this Court followed the mandates of Murphy in determining that genuine issues of material fact existed as to whether the injuries of which he complained occurred in the course of and arose out of his employment. This is quite different from a trial on the merits, where the trier of fact need not construe all the facts in favor of one party, but rather, the fact-finder is permitted to determine the weight to be given to the evidence and to consider the credibility of the witnesses in order to ascertain what he/she believes the facts of the case actually are. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus.
 {¶ 16} Our decision as to the validity of Dr. Park's affidavit for the purposes of summary judgment was irrelevant to the trial court's fact-finding responsibility during the trial on the merits. Moreover, this Court was required to accept Dr. Park's affidavit as true solely forthe purposes of summary judgment in determining whether a genuine issue of material fact existed. At no point in this Court's opinion regarding summary judgment did this Court ever state or even imply that the trial court was required to accept the affidavit as true during a trial on the merits. As such, the trial court did not act contrary to the law in the manner alleged by the plaintiff. Thus, the first, fourth, and twentieth assignments of error are overruled.
 Manifest Weight of the Evidence {¶ 17} The plaintiff's fifth, sixth, seventh, ninth, twelfth, fifteenth, and seventeenth assignments of error all involve issues pertaining to whether the trial court's judgment was against the manifest weight of the evidence. The plaintiff maintains that the trial court did not accept and apply the integrity and validity of Dr. Park's affidavit, that it did not consider the misrepresentations and false financial reports regarding the condition of the Upper Sandusky Public Schools, that the trial court did not consider him to be both an employee and a union representative at the time of his heart attack, and that the court did not recognize the bias against stress related illnesses that the defendants held. In addition, the plaintiff contends that the trial court did not consider the events of the meeting between himself and the school superintendent, which led to his heart attack, and that it did not consider the fact that the school system did not have a governance document as to how to handle workers' compensation claims.
 {¶ 18} Our review of these assignments of error begins by noting that many of the arguments in support of these assignments of error overlap and/or they are not adequately argued in the brief or supported by law. In addition, some of these assignments of error involve alleged errors by the defendants during the administrative process in failing to determine that the plaintiff was entitled to participate in the workers' compensation fund. Plaintiff appears to misunderstand the appellate phase of a workers' compensation claim. When a denial of a workers' compensation claim is appealed to the Common Pleas Court, "[t]he appeal proceeding is a trial de novo[.]" State ex rel. Burnett v. IndustrialComm'n. of Ohio (1983), 6 Ohio St.3d 266, 268; see also Afrates v.Lorain (1992), 63 Ohio St.3d 22, 26. Thus, what occurred during the administrative process is irrelevant. Rather, the trial court is to consider the evidence before it without considering the administrative process to determine whether the plaintiff was entitled to participate in the workers' compensation fund. Afrates, supra. Therefore, the plaintiff cannot claim error on the part of the defendants, but may only contest errors purportedly made by the trial court. As such, the trial court did not err in failing to consider whether the school system had a governance document as to how to handle workers' compensation claims and in failing to consider the bias the defendants purportedly held as to stress related claims, both of which were irrelevant at the de novo trial stage. Thus, the ninth and fifteenth assignments of error are overruled.
 {¶ 19} Next, this Court must determine whether the trial court erred in finding that the plaintiff was not entitled to participate in the workers' compensation fund based upon his other claims. Upon review of the judgment of a trial court following a bench trial, the Ohio Supreme Court has determined that an appellate court should be "guided by a presumption" that the fact-finder's findings are correct. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. In addition, the Court has stated that an appellate court "should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Seasons Coal Co., 10 Ohio St.3d at 80. Thus, this Court will not reverse the trial court's judgment unless it is against the manifest weight of the evidence. Id.; see, also, App.R. 12(C).
 {¶ 20} This Court has previously held that "for purposes of workers' compensation, `[i]njury includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment.'" Brown v. Upper Sandusky Schools (2000), 139 Ohio App.3d 448,451, quoting R.C. 4123.01(C). Therefore, an employee must show both that the injury was sustained in the course of his/her employment and that it arose out of his/her employment in order to participate in the workers' compensation fund. Id. However, an "[i]njury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body" is not a compensable workers' compensation injury. R.C.4123.01(C)(2). In addition, the Ohio Supreme Court has held that "[i]n order for a stress-related injury to be compensable * * * it must be the result of mental or emotional stress that is, in some respect, unusual."Ryan v. Connor (1986), 28 Ohio St.3d 406, 409. Thus, "the claimant must show that the injury resulted from `greater emotional strain or tension than that to which all workers are occasionally subjected[.]'" Id., quoting Wilson v. Tippetts-Abbott-McCarthy-Stratton (1964), 253 N.Y.S.2d 149, 150.
 {¶ 21} The plaintiff contends that his heart attack and attack of Meniere's Disease were caused by the stress he endured during his meeting with Dr. McGlamery regarding the transfer of vocational class units to another school district in order to save money. He maintains that the Upper Sandusky school system was not in dire financial straits as the school board claimed and did not need to transfer the units. Thus, the plaintiff asserts that the false information regarding the school system's finances and his attempt to prove that during his meeting with Dr. McGlamery caused him great stress, which led to his injuries.
 {¶ 22} As proof that his stress-related injuries occurred in the course of and arose out of his employment, the plaintiff presented the testimony of various witnesses who were on the board of education at the time of his heart attack, subsequent to his heart attack, and even prior to his heart attack. The questioning of these witnesses for the most part pertained to the financial status of the Upper Sandusky Schools both before, during, and after the relevant time period. These and other witnesses were also questioned about whether they were ever made aware of the plaintiff's workers' compensation claim, which was irrelevant in the de novo trial as to whether the plaintiff was entitled to participate in the workers' compensation fund. None of these witnesses testified that the school system's financial documents for the relevant time period were falsified or that they had reason to believe the financial situation of the school system was any different from what the documents purported. Furthermore, the plaintiff did not testify about the falsity of the financial documents nor did he present documentary evidence to support his assertion that the financial situation of the school system at the time of his injuries was misrepresented. Thus, if in fact the trial court failed to consider the allegedly false financial reports and condition of the school system, it did not err in doing so because there was no evidence presented in support of the plaintiff's allegations.
 {¶ 23} In addition, Dr. McGlamery, a witness for the plaintiff, testified that his March 8, 1994 meeting with the plaintiff was cordial with neither raising his voice. Dr. McGlamery further testified that the plaintiff was concerned with what he perceived were various problems within the school system but that he did not appear to be tense, anxious, or otherwise stressed during their meeting. Dr. McGlamery further testified that after the two men talked, the plaintiff stated that he needed to end the meeting and the two parted without incident. Although the plaintiff presented other witnesses who testified about what occurred after the meeting, neither the plaintiff or any other witness refuted Dr. McGlamery's testimony as to the circumstances surrounding the meeting. Based upon the evidence adduced at trial, the plaintiff failed to demonstrate any evidence that he was under some type of unusual emotional distress.
 {¶ 24} The plaintiff maintains that the affidavit of Dr. Park was sufficient evidence to show that his injury resulted from his employment. Furthermore, the plaintiff claims that Dr. Park's affidavit conclusively established that he did not have pre-existing heart disease, which proves that his heart attack was not caused by a natural deterioration of his heart. However, the trial court found that the plaintiff failed to "present any medical testimony relevant to the issue of proving stress and other matters which were necessary for him to prevail in this case." We agree.
 {¶ 25} Once again, the plaintiff relied on our decision as to summary judgment and erroneously chose to interpret our opinion to mean that the trial court was obligated to accept Dr. Park's affidavit as evidence during the trial that his injuries were caused by his employment. Although the trial court admitted the affidavit into evidence after the defendants stipulated to its authenticity, the affidavit did not constitute expert testimony. The Rules of Evidence provide that a witness may testify as an expert if he/she, among other things, "is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; [and] [t]he witness' testimony is based on reliable scientific, technical, or other specialized information." Evid.R. 702(B), (C).
 {¶ 26} Dr. Park's affidavit does not state his credentials, other than that he is a general practitioner and the plaintiff's personal physician. The affidavit also does not state that his opinions regarding the plaintiff are based on reliable information nor does the affidavit state upon what facts or data Dr. Park bases his opinions as required by Evidence Rules 703 and 705. Although the circumstances surrounding the admission of Dr. Park's affidavit at the trial were somewhat misleading on the part of the defendants because counsel indicated that he would stipulate to the affidavit's authenticity to avoid having to call Dr. Park to testify, the opinions contained in the affidavit still were not sufficiently supported to constitute medical evidence. Furthermore, the defendants never had an opportunity to cross-examine Dr. Park. Thus, the trial court did not err in not considering the affidavit. Moreover, even if the affidavit established a causal connection between the plaintiff's employment and his injuries, the trial court, as fact-finder, was well within its purview to find the defendants' medical expert, cardiologist Dr. Lach, more credible and to determine the facts based upon Dr. Lach's opinion. Dr. Lach's depositional testimony, which included cross-examination by the plaintiff, provided his credentials, experience, and the facts and data upon which he based his opinion. Although Dr. Lach never examined the plaintiff, he did examine various medical records of the plaintiff. Based upon this information, Dr. Lach opined that the plaintiff's arteries were significantly blocked prior to his heart attack and that his employment was not the cause of the attack. Thus, the trial court's judgment in favor of the defendants was not against the manifest weight of the evidence. Accordingly, the fifth, sixth, seventh, twelfth, and seventeenth assignments of error are overruled.
 Bias of the Trial Court {¶ 27} The final category of assignments of error made by the plaintiff concern the trial court's bias against him. The plaintiff alleges that the trial court was intimidated by counsel from the Attorney General's office, that the court interfered with his constitutional rights, and that the court's judgment was prejudiced and biased. Aside from the fact that plaintiff has failed to support these assertions by way of the record and legal support, our review of the record finds no merit in these contentions. To the contrary, the trial court allowed the plaintiff, a licensed attorney in the State of Ohio who represented himself, a great deal of latitude during the trial. Although several of the witnesses called by the plaintiff to testify provided little if any relevant testimony, the trial court allowed much of their testimony, which was over the objection of defense counsel at times. In addition, the court provided the plaintiff with instructions as to how to properly question witnesses when the plaintiff was experiencing difficulty. The record does not reveal any instances of the trial court showing favoritism to the defendants or preventing the plaintiff from introducing relevant testimonial and/or documentary evidence. Thus, the eighth, tenth, eleventh, and eighteenth assignments of error are overruled.
 Sixteenth Assignment of Error {¶ 28} The plaintiff asserts in his sixteenth assignment of error that the trial court erred in not granting judgment in his favor because the parties were engaged in settlement negotiations. First, at no point during the trial did the plaintiff make a motion for a directed verdict in his favor. Thus, the trial court did not err in not granting that which was not requested. Second, this Court is unaware of, and the plaintiff has not indicated in his brief, any law supporting his contention that a trial court must grant judgment in one party's favor because the parties are in settlement negotiations. It is axiomatic that the court cannot force the parties to settle nor may the court grant judgment in favor of one party merely because the parties are conducting settlement negotiations. Therefore, the sixteenth assignment of error is overruled.
 {¶ 29} For these reasons, all the assignments of error are overruled, and the judgment of the Common Pleas Court of Wyandot County, Ohio, is affirmed.
Judgment affirmed.
 BRYANT and WALTERS, JJ., concur.