SOMMER, Appellant,

v.

CONRAD, Admr., Bureau of Workers' Compensation et al., Appellees.

[Cite as *Sommer v. Conrad* (1999), 134 Ohio App.3d 291.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 98CA2622.

Decided Sept. 7, 1999.

292

*Daniel S. Knisley* and *Scott M. Knisley,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Angela Marinakis,* Assistant Attorney General, for appellees.

HARSHA, Judge.

Roberta Sommer, appellant, appeals the trial court's grant of a directed verdict in favor of James Conrad, the Administrator of the Bureau of Workers' Compensation, the Industrial Commission of Ohio, and Bloom–Vernon Local School District. She assigns the following errors:

"*First Assignment Of Error:*

"The Trial Court Erred When It Granted Appellee's [*sic*] Motion For A Directed Verdict And Held That Appellant Failed To Demonstrate The Existence of Stress as Required under *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379.

"*Second Assignment Of Error:*

"The Trial Court Erred When It Held That The Circumstances Surrounding Sommer's Death Were Not Unusual, And Then Determined As A Matter of Law That The Situation Was One In Which All Workers Are Occasionally Subjected.

"*Third Assignment Of Error:*

"The Court Erred When It Determines, As A Matter Of Law, That Medical Evidence Demonstrating Medical Causation By A Reasonable Degree Of Medical Probability That The Condition More Likely Than Not Caused The Injury, Is Insufficient Under *Ryan* To Establish Causation."

Carl Sommer ("Sommer"), appellant's husband, was employed as a school bus driver by Bloom–Vernon Local School District. In August 1992, he was driving his afternoon route, dropping off elementary school children at their homes, when he suffered a fatal heart attack. Two children were able to stop the bus and steer it off the road. None of the children were injured.

Appellant filed an application for payment of death benefits with the Bureau of Workers' Compensation, which the bureau denied. She appealed to the Industrial Commission of Ohio, which also denied her claim. She then appealed to the Scioto County Court of Common Pleas.

At the jury trial, three children, who were on the bus when Sommer died, testified that the children on the bus were rowdy, had verbal fights, threw paperwads, and whistled the majority of the time on the bus. One of the children testified that Sommer had to stop the bus about four or five times a week to calm the children. A former bus driver, who had once filled in for Sommer, testified that driving a school bus gave her more stress and pressure than any other job she ever had. Sommer's treating physician testified that the stressful situation he was in aggravated his preexisting heart disease. Appellant's expert testified that, within a medical degree of probability, Sommer's environment while he was

driving the school bus likely precipitated the cause of his death. After appellant rested, the trial court granted appellees' motion for a directed verdict.

In each of her assignments of error, appellant asserts a different reason why the trial court erred in directing a verdict. In her first assignment of error, she asserts that the trial court erred by holding that she had failed to demonstrate the existence of stress, as required by *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379. In her second assignment of error, she asserts that the trial court erred by holding that the circumstances surrounding her husband's death were not unusual and by determining that, as a matter of law, the situation he was in was one to which all workers are occasionally subjected. In her third assignment of error, she asserts that the trial court erred by determining, as a matter of law, that the medical evidence presented at the trial was insufficient to establish causation.

 The record contains a transcript of the trial court's discussion with the parties' attorneys. While the transcript reflects the trial court's opinion that appellant had failed to prove that Sommer was under greater stress than that to which all workers are occasionally subjected, no such holding was carried over to the judgment entry. It is well settled that a trial court speaks only through its journal entries and not by oral pronouncement. *State v. King* (1994), 70 Ohio St.3d 158, 162, 637 N.E.2d 903, 906–907; *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 173, 23 OBR 336, 338, 492 N.E.2d 146, 148, fn. 3; *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, paragraph one of the syllabus. An appellate court will not ordinarily review the substantive or procedural content of a courtroom colloquy that was not carried over into the judgment entry. *Snouffer v. Snouffer* (1993), 87 Ohio App.3d 89, 91, 621 N.E.2d 879, 880–881; *Howard v. Wills* (1991), 77 Ohio App.3d 133, 140, 601 N.E.2d 515, 520, fn. 5. Therefore, we will not consider the trial judgment's statements as holdings. We will consider all of her assignments of error together, and focus on the assertion common to all of her assignments of error, *i.e.*, that the trial court erred in directing a verdict.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

 A motion for a directed verdict presents a question of law, not a question of fact, even though in deciding such a motion it is necessary to review

and consider the evidence. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404–405. A motion for directed verdict tests the legal sufficiency of the evidence. *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 165–166, 493 N.E.2d 293, 295. Accordingly, we make an independent review. When considering a motion for a directed verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469. A court considering a motion for directed verdict must determine not whether one version of the facts presented is more persuasive than another; rather, the court must determine whether the trier of fact could reach only one result under the theories of law presented in the complaint. *Id.* Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828, 837.

In *Ryan, supra*, the Supreme Court of Ohio established a two-part test for allowance of a claim for workers' compensation benefits for a physical injury arising from mental stress. First, the injury or death must have "resulted from greater emotional strain or tension than that to which *all* workers are occasionally subjected." (Emphasis added.) *Ryan*, 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379, paragraph two of the syllabus. Under this standard, the claimant's stress is compared to the strain and tension all other workers occasionally experience, rather than others in the worker's specific occupation or profession. *Howell v. Euclid & Wickliffe Serv.* (1994), 99 Ohio App.3d 680, 651 N.E.2d 1018; *Waddington v. Levison* (1994), 98 Ohio App.3d.754, 649 N.E.2d 884; *Pence v. McSwain Carpets, Inc.* (1993), 87 Ohio App.3d 793, 623 N.E.2d 201; *Small v. Defiance Public Library* (1993), 85 Ohio App.3d 583, 620 N.E.2d 879. But, see, *Toensing v. MK–Ferguson* (1992), 76 Ohio App.3d 826, 829, 603 N.E.2d 396, 398 (requiring evidence that the injury "was caused by work-related physical exertion and greater stress than that customary in the decedent's usual work routine"). This objective test relates to the stress itself, not to the claimant's individualized or subjective response to it. Pompeani, Mental Stress and Ohio Workers' Compensation: When is a Stress–Related Condition Compensable? (1992), 40 Cleve.St.L.Rev. 35, 43.

The second part of the *Ryan* test requires the claimant to show by a preponderance of the evidence that the decedent's death was "accelerated by a substantial period of time as a direct and proximate result of the [stress]." *Ryan*, 28 Ohio St.3d at 410, 28 OBR at 465, 503 N.E.2d at 1382, citing *McKee v. Elec. Auto–Lite Co.* (1958), 168 Ohio St. 77, 5 O.O.2d 345, 151 N.E.2d 540, syllabus.

■ At the trial, witnesses testified as to the rowdy nature of the school children on Sommer's bus route. He had to stop the bus approximately four to five times a week to regain control of the children. In fact, a former bus driver for Bloom–Local testified that it was the most stressful job she had ever had. Given the factual nature of this test, see *Douglas v. Bur. of Workers' Comp.* (1995), 105 Ohio App.3d 454, 460, 664 N.E.2d 565, 569, and the testimony at trial, we believe that reasonable minds might conclude that the stress Sommer was subjected to on the bus was greater than that to which all workers are occasionally subjected.

■ The appellees offer a compound argument. First, they contend that appellant was unable to establish that the level of stress experienced by a school bus driver on a routine basis is greater than that experienced by all workers occasionally. Having failed in this regard, the appellant also failed to establish that the events on the day the appellant's husband died were so extraordinary as to create "unusual stress" in the *Ryan* context, according to the appellees. We tend to agree with the appellees that the occupation of school bus driver is not *per se* unusually stressful within the meaning of *Ryan*. However, simply because a specific bus route routinely subjects its driver to high levels of stress does not eliminate the potential that a high, but routine, stress level can exceed that to which all workers are occasionally subjected. In other words, the frequency or routine nature of a stress is not the proper focus of *Ryan*'s second syllabus. Rather, the test is simply whether that stress, be it a routine, occasional or a one-time occurrence, exceeds the purposely high threshold set by *Ryan*, e.g., greater than that which is occasionally experienced by all workers. In this case, we conclude that this question is close enough to be decided by a jury. *Ryan* recognizes that all workers are occasionally subjected to extraordinary circumstances that create abnormal stress. As a matter of public policy, *Ryan* declares that in order to recover for stress-related injury, a worker must establish that the stress involved exceeds even that level of occasional stress. The fact an employee is routinely subjected to that level of stress and suffers no injury does not negate the worker's remedy when he or she is not so fortunate.

■ While the first prong of the *Ryan* test is objective, *Ryan*'s proximate cause component focuses upon the claimant's subjective response to the stress. See *Small*, 85 Ohio App.3d at 587, 620 N.E.2d at 882. Generally, the causal relationship required by *Ryan* is a factual question and therefore an issue best left to medical experts and the trier of fact. *Ryan*, 28 Ohio St.3d at 410, 28 OBR at 465, 503 N.E.2d at 1382. See, also, *Village v. Gen. Motors Corp.* (1984), 15 Ohio St.3d 129, 136, 15 OBR 279, 284, 472 N.E.2d 1079, 1084. Sommer's treating physician testified:

"[Attorney Knisley]: Doctor, * * * do you have an opinion within a reasonable degree of medical certainty or probability as to whether or not the stress, pressure, and responsibility and job of driving a school bus for the school system caused his [Sommer's] diagnosed condition of death * * *, or in the alternative, aggravated the preexisting conditions that are described in the autopsy report and that you've described to the jury today?

"* * *

"[Ramon Malaya, M.D.]: * * * The stressful situation that he was driving, aside from just plain driving the bus, aggravated the preexisting situation that he has * * *."

Appellant's expert testified:

"[Philip Binkley, M.D.]: I believe that within a medical degree of probability that the environment of driving the school bus with a group of students who were evidently difficult to control created an environment that was stressful to the patient and likely precipitated the cause of his [Sommer's] death, that being either a heart attack or a lethal abnormal heart rhythm produced by decreased blood flow to the heart."

We believe that from this testimony, reasonable minds could conclude that Sommer's death was accelerated by a substantial period of time as a direct and proximate result of the stress.

The appellees seem to argue that we should not consider the physicians' testimony because it was based upon a vague hypothetical. Both experts testified by videotaped depositions. Objections to videotaped testimony should be made before trial and must be made before actual presentation of the videotape at trial. *Vargo v. Travelers Ins. Co.* (1987), 34 Ohio St.3d 27, 32, 516 N.E.2d 226, 231. See, also, Sup.R. 13(A)(15). While appellees objected at the deposition, the objections were never communicated to the trial court. Accordingly, they were waived. *Id.*

The trial court erred in granting a directed verdict because reasonable minds could come to different conclusions concerning each element of the *Ryan* test. Accordingly, we sustain appellant's assignments of error, reverse the judgment of the trial court, and remand the cause for a new trial.

*Judgment reversed*
*and cause remanded.*

KLINE, P.J., concurs.

PETER B. ABELE, J., dissents.