KAIN; Garretson, Admr., et al., Appellants,

v.

CONRAD, Admr., et al., Appellees.

[Cite as *Kain v. Conrad* (2000), 139 Ohio App.3d 460.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 18190.

Decided Oct. 13, 2000.

*Deborah J. Adler*, for appellants.

*Edna Scheuer* and *Scott A. King*, for appellees.

*Betty D. Montgomery*, Attorney General, and *James Carroll*, Assistant Attorney General, Workers' Compensation Section, for James Conrad.

BROGAN, Judge.

Sharon Garretson, as mother and legal guardian of Jill and Mary Kain, appeal from the judgment of the Montgomery County Common Pleas Court in favor of Delphi Chassis Systems ("Delphi").

The action in the trial court began as an appeal from the denial of Garretson's claim for workers' compensation benefits for the death of her husband, Rande Kain.

In her complaint, Garretson contended that her husband was injured in the course of his employment with Delphi on September 8, 1992, and a claim was recognized for "acute lumbar strain, herniated disc at L 4–5 and left S1 radiculopathy." She asserted that her husband's death on April 11, 1995, was substantially hastened or accelerated as a result of the recognized industrial injury.

Garretson asserted that she and her children were wholly dependent upon Rande Kain at the time of his death. She asserted that she applied for death benefits, was denied them by the district hearing officer and an appeal was refused by the Industrial Commission of Ohio.

Delphi moved for summary judgment after the matter was at issue, contending that there was no material evidence that Rande Kain's 1992 industrial injury had accelerated his death by a substantial period of time.

In granting Delphi's summary judgment motion, the trial court noted that Rande Kain's death was caused by atherosclerosis ("hardening of the arteries") and that it was Garretson's position that as a result of his industrial injury Kain was reduced to a sedentary lifestyle that substantially hastened his death from atherosclerosis. The trial court noted the following as rationale for its decision to grant the defendant's motion:

"For her part, Garretson relies on the deposition testimony of Dr. Joe N. Hackworth, who indicated that Kain's sedentary lifestyle *could be* one factor which led to his death from atherosclerosis. However, as noted above, *McKee [Elec. Auto–Lite Co.* (1958), 168 Ohio St. 77, 151 N.E.2d 540] makes clear that the causal connection must be *substantial.* As well, when expert medical testimony is required in a case to establish a causal connection between the industrial injury and a subsequent physical condition, the proof must establish a probability and not a mere possibility of such causal connection. *Stacey v. Carnegie Illinois Steel Corp.* (1951), 156 Ohio St. 205, 210 [101 N.E.2d 897, 899–900].

"Several additional factors are important in order to analyze the causal connection between Kain's 1992 accident and his 1995 death in its proper context. In 1989, Kain injured his back while playing with one of his daughters. The

injury required surgical repair and follow-up treatment for recurring back pain into 1990. Prior to his 1992 accident, Kain had a history of heart palpations and dizziness. He also had a history of drug and alcohol abuse. There is evidence of heart ailments in Kain's family. Kain had also been diagnosed for high blood pressure in 1985, and for high blood cholesterol levels as early as 1998. Additionally, Kain was a habitual smoker. All of these factors are important because all of them, along with a sedentary lifestyle, are potentially contributing factors to atherosclerosis.

"In April of 1993 (a little over six months after his work-related accident), Kain reported to his doctor that he was experiencing pain in his lower back. The medical condition giving rise to this pain was diagnosed as being L3–L4 spinal stenosis, and at some point it required corrective surgery. There are no facts before the Court indicating that this condition was related to, or resulted from, Kain's work-related accident. In fact, the evidence suggests that spinal stenosis is a degenerative disorder, not something generally induced by an independent traumatic injury. However, facts indicate that Delphi authorized the medical treatment of the spinal stenosis. Furthermore, authority indicates that an employer's authorization of medical treatment subsequent to an already-recognized workers' compensation claim provides a conclusive determination that the employer recognized the subsequent condition as part of the initial claim. See *Garret [Garrett] v. Jeep Corp.* (1991), 77 Ohio App.3d 402, 413 [602 N.E.2d 691, 698–699]. For the purposes of this Motion only, the Court accepts the proposition that Delphi recognized Kain's treatment for spinal stenosis as related to his earlier accident. The question remains, however, whether the 1992 accident, compounded by the spinal stenosis, proximately caused Kain's death.

"Where a party bears the burden of proof of establishing proximate cause and seeks to do so by an inference from a set of proven facts, he must further show that the actual cause he seeks to establish is more probable than other possible causes which could be inferred from those facts. *Westinghouse Electric Corp. v. Dolly Madison Corp.* (1975), 42 Ohio St.2d 122, 126–27 [326 N.E.2d 651, 655–656]. In addition to the other potentially 'contributing factors' to atherosclerosis listed above, there is evidence that Kain led a substantially inactive lifestyle prior to his 1992 accident. There is evidence that Kain was not regularly inclined to heed medical advice concerning steps he could take to improve his health. As well, family members indicated that there was no reason to expect that Kain would have exercised in any constructive way in the couple years prior to his death even if he had the opportunity. None of these factors is dispositive in their individual right, but the collective weight of evidence cannot be overlooked.

"For the sake of this Motion, the fact that a sedentary lifestyle can be a contributing cause to the worsening of a condition of atherosclerosis is accepted

as true. The inference is also acknowledged that Kain's sedentary lifestyle contributed to his death. Those findings, however, are not enough for Garretson to survive summary judgment. Dr. Hackworth's testimony fails to provide the requisite quantum of evidence necessary to put this issue before a jury. It is not enough that he state, as he did, that Kain's 1992 injury substantially hastened Kain's death. This statement alone is mere 'magic words.' There is no indication from Dr. Hackworth, or from any other source, that Kain's 1992 accident was any more a proximate cause of this death than any other of his medical conditions.

"The evidence shows at best that Kain's 1992 accident was a contributing factor to the gradual decline of his health. Such a contribution is not tantamount to a 'substantially hastening' factor, an 'accelerating' factor, or a 'proximate cause.' See, e.g., *Ratner v. Daugherty* (1979), 58 Ohio St.2d 410 [390 N.E.2d 1194]. * * *"

■ Appellant contends that the trial court erred in granting the appellee's summary judgment motion because there was a genuine issue of material fact whether there was a proximate causal relationship between appellant's industrial injury and his death.

Appellant contends that expert witness, Dr. Joseph Hackworth did opine in the discovery deposition that Rande Kain's industrial injury substantially hastened the progression of his coronary atherosclerosis and his death.

Appellant directs the court's attention to Dr. Hackworth's deposition at pages 69 and 70:

"Q. Doctor, you were asked several questions about various risk factors with respect to hypertension, family history, et cetera. And you indicated that those can be risk factors for the development of atherosclerosis. You indicated a sedentary lifestyle is maybe a lesser risk factor. My question will be, if you combine a sedentary lifestyle with those other risk factors, does not make one more likely to develop those problems?

"MR. KING: Object to form, leading, as well as a compound question.

"A. It's known that by adding risk factors in the same person the risk goes up, so if I take high blood pressure as a stand-alone there is a risk, but the risk goes up exponentially when I add high blood pressure and diabetes, or high blood pressure and cholesterol. Those and sedentary lifestyle, the risk goes up exponentially.

"Q. If you take an individual who has a prior, from an industrial injury, has risk factors such as high blood pressure and high cholesterol, and with a family history of heart attack, atherosclerosis disease as well as risk factors including

heavy smoking, and then you combine that with a forced sedentary lifestyle due to an industrial injury, in your opinion can that cause one to have a heart attack.

"MR. KING: Object, form.

"Q. In terms of reasonable medical probability?

"MR. KING: Object, form, leading, and it's a compound question, too. Please answer.

"A. I think that having all those risk factors and adding the sedentary lifestyle compounds the risk factors and hastens the process of atherosclerosis.

"Q. Doctor, in your opinion, to a reasonable degree of medical probability, does the hastening of atherosclerosis heart disease lead one, or make one more liable to develop a heart attack?

"MR. KING: Objection, form.

"A. Yes."

Appellant also points out to the deposition testimony of Dr. Ronald Koppenhoefer, who was Rande Kain's treating physician. Appellant notes that Dr. Koppenhoefer testified that Rande Kain had told him that he was experiencing constant pain in his low back that radiated into his thigh and calf in June 1993. Dr. Koppenhoefer said that Rande Kain also complained of constant numbness in his left foot and that he was taking Naprosyn to control his pain.

Appellant also notes that Dr. Koppenhoefer examined Rande Kain in March 1995, and that Rande was complaining of the same constant pain he experienced in 1993. Dr. Koppenhoefer testified that Rande Kain told him that his pain was aggravated by standing for ten minutes or bending, stooping or lifting. Dr. Koppenhoefer opined that Rande Kain's increased back pain in March 1995 was related to his L3–4 laminectomy which was performed on October 18, 1994, and he believed the surgery could have placed stress on Kain's preexisting lumbar scoliosis.

Appellant also notes that Dr. Hackworth had reviewed Dr. Koppenhoefer's report when he opined to a reasonable degree of medical probability that the pain due to the injury of September 8, 1992, subsequently hastened the progression of Kain's coronary atherosclerosis and death because of Kain's inability to exercise.

Delphi argues that the trial court properly granted summary judgment because the plaintiff failed to present evidence that the industrial accident "substantially" accelerated Kain's death, and failed to present evidence that "but for" the accident, the decedent would have lived longer.

Delphi argues that appellant's brief omits Dr. Hackworth's testimony on what he meant by the use of the terms "substantially hastened." Delphi refers to portions of Dr. Hackworth's deposition testimony at pages 72–77:

"Q. Is it your opinion within a reasonable degree of medical certainty that Mr. Kain's death was substantially accelerated by the September 8, 1992 back injury?

"A. It is my opinion that Mr. Kain's death was substantially accelerated by his inability to exercise.

"Q. How many days was it accelerated by?

"A. I have no idea.

"Q. And there is no scientific way of knowing, correct?

"A. No, correct.

"* * *

"Q. When you said earlier that it was your opinion that there was a substantial hastening of Rande Kain's death based upon his failure to take advantage of exercise opportunities, what did you mean by substantial hastening?

"A. Well, I think if he had exercised he probably would have reduced the early, or prevented the early MI [myocardial infarction, *i.e.*, heart attack] and probably lived longer. We feel and we know from our experience people who exercise lived longer and don't have heart attacks as often. So, that's what I mean by that.

"Q. I understand that's what hastening means, but I'm trying to understand what you meant by the term substantially hastening. When you say Rande Kain's death was substantially hastened, what do you mean when you used the term substantially hastened?

"A. Well, I'm saying more likely than not his inability to exercise caused him to die earlier than being able to exercise.

"Q. But you are unable to quantify the term substantial?

"MS. ADLER: Objection.

"A. No.

"Q. I asked the question negatively. Are you able to quantify the term substantially?

"A. No.

"* * *

"Q. Is there any way to ascertain whether or not Mr. Kain would have died on April 11, if the September 8, 1992 accident had not occurred?

"A. No.

"* * *

"Q. As we sit here today you are able to say that if Mr. Kain had taken advantage of opportunities to exercise adequately and appropriately he might have lived longer, correct?

"A. That is true.

"MS. ADLER: Objection.

"Q. There is no way to quantify how much longer he might have lived, correct?

"A. That's correct.

Most important, Dr. Hackworth testified that the decedent's death was not accelerated by a "significant" period of time:

"Q. Doctor, just so I understand what your testimony is this afternoon, with respect to˙not being able to quantify or to say what substantially. * * * With respect to your ability to talk about whether or not there was a substantial acceleration of the death, are you able to say whether or not, from a cardiological standpoint, Mr. Kain's death was accelerated by a significant period of time due to his inability to exercise following his industrial injury in September of 1992?

"A. No."

Appellee also notes that Dr. Hackworth testified that Rande Kain had a "degenerative" spinal stenosis unrelated to the industrial accident and this condition alone would have prevented Kain from exercising.

Appellee also argues that no reasonable person could conclude from the evidence that the industrial accident caused Rande Kain not to exercise. Appellee argues that the undisputed evidence was that Rande Kain was thirty pounds overweight and was a heavy smoker, that he had high cholesterol and refused to take medication to reduce it, and that he had never engaged in any form of aerobic exercise before or after the industrial accident. Appellee notes that Dr. Hackworth conceded that there was no evidence that Rande Kain would have exercised had the industrial accident not happened.

In *McKee v. Elec. Auto–Lite Co.* (1958), 168 Ohio St. 77, 151 N.E.2d 540, the Ohio Supreme Court held that under the Workmen's Compensation Act, death from a pre-existing cause, and accelerated by an accidental injury in the course of employment, is compensable, where the death is accelerated by a substantial period of time as a direct and proximate result of the accident.

In *McKee*, the claimant claimed that an industrial injury to her husband's finger aggravated his pre-existing heart disease causing his death. The dece-

dent's physician testified that he had a very bad heart condition and the finger injury hastened the death of the decedent, and that he might have lived another six months or even two years, or perhaps his death was hastened by one day or · by one week.

Justice Stewart wrote on behalf of the court in reversing the judgment for the plaintiff:

"In the present case, as we have shown from an analysis of the testimony of plaintiff's expert witness, his answer left only a speculation or guess as to any acceleration of McKee's death by the accident he sustained, in spite of the witness's words to the effect that his opinion was that there was a direct and causal connection between the accident and the acceleration of the death.

"If we are to continue to hold, despite no provision therefor in the statute, that a death from a pre-existing cause and accelerated by an accidental injury is compensable as a death claim under the statute, there must be a substantial causal relationship between the accident and the accelerated death, and such relationship can not be proved by mere magic words of direct causation without evidence to definitely support it.

"After our decision in the *Larrissey [v. Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 98 N.E.2d 419] *case,* we decided the case of *Lopresti v. Community Traction Co.,* 160 Ohio St., 480, 117 N.E.(2d), 2, and held as follows in the second paragraph of the syllabus:

" 'In a wrongful death action, where it is claimed that the death was accelerated by the wrongful act of the defendant, recovery can be had only where it is shown by the evidence that death was accelerated by an appreciable period of time as a direct result of the wrongful act.'

"We are of the opinion that the same rule should apply with reference to the acceleration of death under the Workmen's Compensation Act, and that there can be no recovery without an acceleration by an appreciable and substantial period of time." 168 Ohio St. at 82, 83, 151 N.E.2d at 544.

In *Oswald v. Connor* (1985), 16 Ohio St.3d 38, 476 N.E.2d 658, the Ohio Supreme Court found that there was sufficient evidence in the record to support the trial court's determination that the decedent worker's death from a heart attack was accelerated by stress related to the failure of physicians to properly diagnose a work-acquired tuberculosis. The court found that the trial court's determination that the combined result of the pre-existing disease (coronary artery disease), the occupational disease, and Oswald's negative psychosomatic reactions directly and proximately caused his death at a "substantially earlier time than would have been the case without the occupational disease—is supported by the record." *Oswald, supra,* at 44, 476 N.E.2d at 664.

In *Bednarik v. Ohio Bur. of Workers' Comp.* (Mar. 23, 2000), Jefferson App. No. 98JE30, unreported, 2000 WL 309405, the Jefferson County Court of Appeals found that sufficient evidence existed to support the trial court's judgment that the decedent's death from a pre-existing disease was "substantially" accelerated by his industrial injury, where it could be inferred from the expert physician's testimony that the decedent's death occurred at least nine years earlier as a result of an allowed psychological condition.

We agree with the trial court's decision to grant a summary judgment in this matter. The plaintiff's expert witness, Dr. Hackworth, was unable to determine whether Rande Kain's death was accelerated by a "significant" period due to his inability to exercise. Death from a pre-existing disease must be accelerated by a substantial period of time due to the industrial injury. The fact that the death occurred "earlier" because of the decedent's inability to exercise is insufficient to create a remedy under the Workers' Compensation Act. *McKee v. Electric Auto–Lite Co., supra, syllabus.* The assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

GRADY, P.J., and FAIN, J., concur.