DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court summary judgment in favor of James Conrad, Administrator of the Bureau of Workers' Compensation, and Athens Plastics, Inc., defendants below and appellees herein.
George E. Ingram, plaintiff below and appellant herein, assigns the following error for review:
 "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; MORE SPECIFICALLY, THE TRIAL COURT ERRED IN RULING THAT THERE WAS NO ISSUE OF FACT AS TO WHETHER THE PLAINTIFF COULD PARTICIPATE IN THE WORKERS' COMPENSATION FUND FOR THE CONDITIONS LISTED IN THE PLAINTIFF'S COMPLAINT."
In 1967, appellant was involved in a motor vehicle accident. As a result of the injuries he received in the accident, his spleen was removed. The spleen is an organ that fights infection. Thus, a person without a spleen carries a greater risk of infection.
In 1998, appellant was employed as the general manager for Athens Plastics, Inc. Between January and April of 1998, in order to help the plant function smoothly, appellant worked almost seven days per week, sometimes up to twenty hours per day. On April 28, 1998, appellant was admitted to Adena Hospital Emergency Room with flu-like symptoms. Doctors determined that appellant had become infected with pneumococcal pneumonia. Later the same day, appellant was transferred to Grant Memorial Hospital in Columbus "with problems stemming from overwhelming post splenectomy Pneumococcal sepsis." Appellant subsequently lapsed into a coma, had renal failure, suffered "massive damage to the skin from dermal hemorrhages," and "suffered clotting of the distal vasculature of all four extremities." Eventually, appellant's doctors found it necessary to amputate portions of appellant's arms and legs.
Appellant filed a First Report of Injury report with the Ohio Bureau of Workers' Compensation. He sought compensation for the complication of injuries he suffered as a result of contracting pneumococcal pneumonia. Appellant claimed that due to the stressful situation at work, his body became "run down" and that he contracted the germ that caused his illness while at work. Appellant's claim for benefits was denied at all administrative levels.
On December 29, 1999, appellant filed a complaint against appellees in the Athens County Common Pleas Court. Appellant's complaint alleged that on April 28, 1999, he sustained an injury in the course of and arising out of his employment. He claimed that his injuries included pneumococcal pneumonia, pneumococcal infection, immunocompromise, loss of both kidneys, and loss of both arms and legs. Appellant alternatively claimed that he contracted an occupational disease. He demanded that he be allowed to participate in the State Insurance Fund for his injuries or occupational disease.
Appellees denied appellant's claim. In their joint motion for summary judgment, appellees argued that no genuine issues of material fact remained regarding whether appellant: (1) was injured while in the course of and arising out of employment; or (2) contracted an occupational disease. Appellees referred to Dr. Rodney K. Kusumi's deposition testimony. Dr. Kusumi is the consulting physician who treated appellant at Grant Hospital. In his deposition, Dr. Kusumi stated that whether appellant contracted pneumococcal pneumonia at work was simply not provable. Dr. Kusumi further opined that appellant's illness was not stress-related. Instead, Dr. Kusumi stated that appellant likely contracted the infection due to his lack of a spleen. Dr. Kusumi explained that an individual without a spleen is more susceptible to infection.
Appellant, on the other hand, asserted that genuine issues of material fact remained as to whether he suffered an injury in the course of and arising out of employment and as to whether he contracted an occupational disease.
In support of his argument, appellant referred to the deposition testimony of Dr. Charles V. Mattingly, appellant's expert medical witness. Dr. Mattingly, like Dr. Kusumi, stated that a person without a spleen has a greater risk of infection. Dr. Mattingly also stated that a person lacking a spleen is more susceptible to pneumococcal bacteria, the bacteria that infected appellant, but that he disagreed with Kusumi's opinion that appellant's lack of a spleen was the most likely cause of his illness. Rather, Dr. Mattingly explained that the pneumococcal bacteria is largely spread by human contact and that a person could be exposed to the bacteria anywhere. He stated that although he could not pinpoint the location where appellant contracted the bacteria, he believed "[t]here wold be a high probability," that appellant contracted the bacteria at work. Mattingly explained: "It's highly probable that his close association in that area, assuming when he went home he was not frequenting bars and going into other enclosed areas, that it most of all probably was at the workplace." Mattingly continued to acknowledge, however, that one cannot really know where one contracts bacteria.
Mattingly also indicated that (1) a person with a weakened immune system is more susceptible to contracting the bacteria, and (2) chronic stress and fatigue can influence the immune system's response and increase the risk of disease. Mattingly explained that "high levels of chronic stress have been associated with an increased susceptibility to infectious disease." He opined that chronic stress "certainly could be a direct cause and effect" of an infectious disease.
Mattingly further stated that appellant's asplenic condition, plus his chronic stress, could "produce a certain breakdown in the immune system or make him immunodepressed to the point that he had an overwhelming infection." Mattingly opined that appellant's chronic stress and fatigue were a direct and proximate cause of the immunocompromise and stated that a "high probability" existed that appellant's immunocompromise resulted from his course of employment. Mattingly further testified that appellant's immunocompromised condition was a direct and proximate cause of appellant's renal failure and of his amputations. Mattingly explained that multiple causes could have contributed to appellant's immunocompromised condition, including his lack of a spleen and the excessive stress associated with his employment.
With respect to whether appellant contracted an occupational disease, Mattingly stated that: (1) he did not know whether a greater hazard of developing the illness existed at Athens Plastic than anywhere else; and (2) he did not know if employment at Athens Plastic created a risk of contracting the disease in greater degree and in a different manner from the public in general.
Later in his deposition, however, Mattingly stated that appellant's employment resulted in a hazard, which distinguishes the employment in character from employment generally, because of appellant's position of high responsibility. Mattingly stated: "[Appellant] was highly predisposed to an infection due to the position of being a manger at this workplace and the excessive stress." Mattingly explained that appellant's employment created a risk of becoming immunocompromised in greater degree and in a different manner from the public in general.
When asked about his apparent inconsistent answers, Mattingly stated that he did not believe his answers were inconsistent. Instead, Mattingly explained that his first responses related to questions posed in the abstract and that his second responses related to questions posed based upon a hypothetical. Mattingly stated: "The excessive stress that [appellant] endured differentiates him from being in a plastics factory that may or may not have predisposed factors or a manger who may or may not have predisposing problems."
On June 14, 2001, the trial court granted appellees summary judgment. Appellant filed a timely notice of appeal.
In his sole assignment of error, appellant argues that several genuine issues of material fact remain to be determined at trial. Specifically, appellant contends that reasonable minds can differ as to whether: (1) he sustained an injury in the course of and arising out of employment, and (2) he contracted an occupational disease.
With respect to his claim that genuine issues of material fact remain regarding whether he suffered an injury, appellant argues that evidence exists to indicate that he contracted the illness at work and that the illness was a direct and proximate cause of his injuries.
Appellant further asserts that the excessive stress and fatigue that his work caused resulted in appellant's immune system being compromised, thus exposing appellant to a greater risk of infection, which, in turn, caused appellant's injuries. Appellant argues that the chronic stress and fatigue began the chain of causation that led to his injuries: (1) the chronic stress and fatigue that his work created led to his immunocompromised condition; (2) his immunocompromised condition led to his illness; (3) his illness led to pneumococcal sepsis; (4) pneumococcal sepsis led to his renal failure and amputations. Appellant further contends that the record reveals genuine issues of material fact remain regarding whether he contracted an occupational disease.
 I.
Initially, we note that when an appellate court reviews a trial court's summary judgment, the appellate court conducts a de novo review. See,e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996),75 Ohio St.3d 280, 662 N.E.2d 264; Jackson v. Alert Fire SafetyEquip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027.
When reviewing a motion for summary judgment, a court must construe all reasonable inferences that can be drawn from the evidentiary materials in a light most favorable to the nonmoving party. See, e.g., Hannah v.Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044;Turner v. Turner (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123. Moreover, a court must take care not "to consider either `the quantum' or the `superior credibility' of evidence." McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 242, 659 N.E.2d 317. As we stated in McGee,103 Ohio App.3d at 242-43, 659 N.E.2d 317:
 "The purpose of summary judgment is not to try issues of fact, but rather to determine whether triable issues of fact exist. * * * Thus, a court should not pass upon the credibility of witnesses or weigh the relative value of their testimony in rendering summary judgment."
(Citation omitted.) See, also, Koeth v. Timesavers, Inc. (May 26, 2000), Geauga App. No. 99-G-2211, unreported ("It is not the province of the trial court in a summary judgment exercise to either weigh the evidence before it, or to accept one party's interpretations of that evidence intoto.").
 II.
After our review of the materials submitted in relation to the summary judgment motion, we agree with the trial court's conclusion that no genuine issues of material fact exist regarding whether: (1) appellant suffered an injury in the course of and arising out of employment; or (2) appellant contracted an occupational disease.
Every employee who is injured or contracts an occupational disease in the course of employment is entitled to receive compensation as provided for in the Ohio Revised Code. R.C. 4123.54. Courts must liberally construe the workers' compensation laws in favor of employees. See R.C.4123.95; Bailey v. Republic Engineered Steels, Inc. (2001),91 Ohio St.3d 38, 40, 741 N.E.2d 121. In Bailey, the court explained that liberal construction of the workers' compensation laws require courts to adopt "the most comprehensive meaning of the statutory terms." Id. The court stated:
 "A liberal construction has been defined as giving `generously all that the statute authorizes,' and `adopting the most comprehensive meaning of the statutory terms in order to accomplish the aims of the Act and to advance its purpose, with all reasonable doubts resolved in favor of the applicability of the statute to the particular case. Interpretation and construction should not result in a decision so technical or narrow as to defeat the compensatory objective of the Act.' Fulton, Ohio Workers' Compensation Law (2 Ed. 1998) 9, Section 1.7."
Bailey, 91 Ohio St.3d 38, 40, 741 N.E.2d 121.
Although a court must liberally construe the workers' compensation laws in favor of the injured employee, a court may not "`read into the statute something which cannot reasonably be implied from the language of the statute.'" Phillips v. Borg-Warner Corp. (1972), 32 Ohio St.2d 266, 268,291 N.E.2d 736 (quoting Szekely v. Young (1963), 174 Ohio St. 213,188 N.E.2d 424 paragraph two of the syllabus).
With the foregoing principles in mind, we first consider appellant's argument that he suffered an injury in the course of and arising out of his employment. R.C. 4123.01(C) defines what constitutes an "injury" in the workers' compensation context: "`Injury' includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."
Thus, for an injury to be compensable, the employee must establish that the injury was received in the course of and arose out of the employee's employment. See Stivison v. Goodyear Tire Rubber Co. (1997),80 Ohio St.3d 498, 499, 687 N.E.2d 458. "`All elements of the formula must be met before compensation will be allowed.'" Id. (quoting Fisherv. Mayfield (1990), 80 Ohio St.3d 275, 277, 551 N.E.2d 1271). "In the course of" refers to "the time, place, and circumstances of the injury."Id. (citing Fisher, 49 Ohio St.3d at 277-78, 551 N.E.2d 1271). "Arising out of" refers to the "causal connection between the injury and the injured person's employment." Id. An injury arises out of employment "when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work was required to be performed and the resulting injury." Fox v.Indus. Comm. (1955), 162 Ohio St. 569, 573, 125 N.E.2d 1.
An injury is not "compensable solely because of a causal connection with" employment. Stivison, 80 Ohio St.3d at 499, 687 N.E.2d 458. "Many uncompensable injuries can be said to bear some causal relation to employment, but legal analysis must focus upon the nature and degree of causal connection." Id. Thus, to prove that the injury arose out of employment, the employee must demonstrate that the injury suffered in the course of employment was a direct and proximate result of the harm or disability for which compensation is sought. See Cook v. Mayfield
(1989), 45 Ohio St.3d 200, 204, 543 N.E.2d 787; Fox v. Indus. Comm. (1955), 162 Ohio St. 569, 125 N.E.2d 1, paragraph one of the syllabus.
Before determining whether an injury was incurred in the course of and arising out of employment, the employee first must establish that the employee suffered an "injury." In Phillips v. Borg-Warner Corp. (1972),32 Ohio St.2d 266, 291 N.E.2d 736, the court held that an employee's weakened resistance that leads to the employee contracting pneumonia cannot constitute an injury within the meaning of the workers' compensation laws. The court stated:
 "Exposure to the hazards created by extreme cold and wind resulting in a workman's weakened resistance to infectious virus, even though it may represent a derangement of his bodily functions, cannot be considered an `injury' within the meaning of the Workmen's Compensation Act."
Id., paragraph one of the syllabus. The court concluded that contracting a virus is neither unusual nor unexpected. Id., 32 Ohio St.2d at 270,291 N.E.2d 736. Moreover, the court rejected the idea that the hazards of a worker's employment could cause a worker's weaker resistance to infection. Id.
We believe that the case at bar is similar to Phillips. Appellant argues, like the employee in Phillips, that the stressful conditions of his employment weakened his resistance to infection and caused him to contract pneumonia. The Phillips court rejected the notion that a weakened resistance to infection constitutes an injury. Thus, until the Ohio Supreme Court revisits its Phillips holding, and in the absence of a clear mandate from the Ohio General Assembly, we agree with appellees that a weakened resistance to infections (an immunocompromised condition) does not constitute an injury within the meaning of the workers' compensation laws.
We additionally note that an "injury" within the workers' compensation laws generally contemplate a physical injury. See Bunger v. Lawson
(1998), 82 Ohio St.3d 463, 465, 696 N.E.2d 1029 ("The workers' compensation system * * * * was designed to manage the compensation of individuals who suffer physical injuries * * *."). But, see, Bailey,supra (stating that an employee may receive workers' compensation for a psychological injury that stems from a co-worker's physical injury). We do not believe that under existing law an immunocompromised state constitutes a physical injury.
Appellant nevertheless asserts that his injuries are compensable because they arose out of work-related stress. Appellant claims that work-related stress caused his immunocompromised condition that started the chain of events leading to his injuries. "A physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C)." Ryan v. Connor (1986), 28 Ohio St.3d 406,503 N.E.2d 1379, paragraph one of the syllabus.
"In order for an injury occasioned solely by mental or emotional stress to be compensable, the claimant must show that the injury resulted from greater emotional strain or tension than that to which all workers are occasionally subjected."
Ryan v. Connor (1986), 28 Ohio St.3d 406, 503 N.E.2d 1379, paragraph two of the syllabus.
Whether an injury resulted from greater emotional strain or tension than that to which all workers are occasionally subjected is an objective question.[1] Small v. Defiance Public Library (1993), 85 Ohio App.3d 583,620 N.E.2d 879. As the court explained in Small:
 "`[The] objective test squarely focus[es] on the stress experienced by all workers as a whole, not just to workers in a particular occupation or profession. To satisfy this test, the worker must distinguish the job stress at issue from the normal, everyday stress which all workers experience from time to time. The test relates to the stress itself, not to the worker's individualized or subjective response to the stress.'"
Id., 85 Ohio App.3d at 587, 620 N.E.2d 879 (quoting Pompeani, Mental Stress and Ohio Workers' Compensation: When is a Stress-Related Condition Compensable? (1992), 40 Cleve. St. L.Rev. 35, 43).
In Ryan, the court discussed what level of stress is needed to demonstrate a compensable injury for purposes of the workers' compensation laws:
 "Because stress is experienced by every person in everyday life, it is necessary to define what kind of mental or emotional stress is legally sufficient to give rise to a compensable injury. Much stress occurring in the course of, and arising out of, employment, is simply a result of the demands of functioning in our society, and participating in the work force, in and of itself, is a stressful activity. In order for a stress-related injury to be compensable, therefore, it must be the result of mental or emotional stress that is, in some respect, unusual."
Ryan, 28 Ohio St.3d at 409, 503 N.E.2d 1379.
Thus, for stress to be considered greater than that to which all workers are occasionally subjected, the employee must show that the stress is unusual.[2] Id.; see, also, Pence v. McSwain Carpets, Inc. (1993), 87 Ohio App.3d 793, 623 N.E.2d 201.
If the employee demonstrates that the stress to which he was subjected was greater than that to which all workers are occasionally subjected, the employee then "must show a substantial causal relationship between the stress and the injury for which compensation is sought." Ryan,28 Ohio St.3d at 410, 503 N.E.2d 1379. The employee must "`show by a preponderance of the evidence, medical or otherwise, * * * that a direct or proximate causal relationship existed between * * * [the stress] and his harm or disability,'" Id. (quoting Fox v. Indus. Comm. (1955),162 Ohio St. 569, paragraph one of the syllabus) (alteration in original).
In Small, the court considered whether the employee was subjected to greater stress than that to which all workers are occasionally subjected. In Small, the employee died of a subarachnoid hemorrhage that was caused by a ruptured aneurysm. The employee had been employed as director of library and she was working on a project to computerize the catalogue system. The employee's husband filed a claim for workers' compensation alleging that the project generated an enormous amount of stress that led to the rupture of the aneurysm. The court of appeals disagreed. The court reasoned that although the project likely caused the employee some stress, the stress was not any greater than that to which all workers are occasionally subjected.
In Pence, the court likewise concluded that the employee was not subjected to stress greater than that to which all workers are occasionally subjected. In Pence, the employee suffered a stroke while in a meeting concerning the discharge of a co-worker. The employee argued that she was subjected to greater stress because: (1) she was concerned about using a computer to conduct a year-end inventory; (2) she had been working overtime in order to complete the year-end inventory; and (3) she was upset that she had to discharge a co-worker who was under her supervision. The court of appeals concluded that while the employee may have experienced some stress, "she did not demonstrate that the stress experienced by her was any greater than the stress to which all workers are occasionally subjected." Id., 87 Ohio App.3d at 796, 623 N.E.2d 201.
In Howell v. Euclid Wickliffe Serv. (1994), 99 Ohio App.3d 680,651 N.E.2d 1018, the court rejected the argument that malfunctioning equipment subjected a worker to greater stress than that to which all workers are occasionally subjected. The court stated that malfunctioning equipment occurs often and that the resulting stress and tension "are the consequences of participating in the work force." Id.,99 Ohio App.3d at 686, 651 N.E.2d 1018. The court reasoned: "There is no evidence that decedent's stress was the result of anything other than the demands of functioning in our society and participating in the work place." Id.
In Sommer v. Conrad (1999), 134 Ohio App.3d 291, 730 N.E.2d 1058, the court concluded that the employee had been subjected to greater stress than that to which all workers are occasionally subjected. In Sommer, the employee suffered a fatal heart attack while driving a school bus full of elementary school children. Three of the children testified that the children who rode on the employee's school bus "were rowdy, had verbal fights, threw paperwads, and whistled the majority of the time." Id.,134 Ohio App.3d at 294, 730 N.E.2d 1058. One of the children stated that the employee had to stop the bus four to five times per week to calm the children. Id. A former bus driver stated that "driving a school bus gave her more stress than any other job she ever had." Id. Under the foregoing circumstances, the court concluded that the employee could have been subjected to greater stress than that to which all workers occasionally are subjected.
In the case at bar, we cannot say that appellant was subjected to greater stress than that to which all workers are occasionally subjected. Although appellant worked long hours and was concerned about the operations of the plant, many workers are occasionally subjected to working long hours. Additionally, many workers often worry about their jobs and their company's well-being. Under the circumstances present in the case at bar, we do not believe that appellant's "stress was the result of anything other than the demands of functioning in our society and participating in the work place." See Howell, supra. "If the full range of work-related stress is to be compensated, a staggering burden could be imposed upon the State Insurance Fund and the rates which would be assessed against employers." Rambaldo v. Accurate Die Casting (1992),65 Ohio St.3d 281, 289, 603 N.E.2d 975 (Brown, J., concurring).
Because appellant has not demonstrated that he was subjected to greater stress than that to which all workers are occasionally subjected, we need not determine whether the stress proximately caused his injuries. SeeHowell, 99 Ohio App.3d at 686, 651 N.E.2d 1018. Consequently, based upon the foregoing reasons, we disagree with appellant that he suffered an "injury" within the meaning of the workers' compensation laws.
 III.
We next consider appellant's claim that he contracted an occupational disease. R.C. 4123.68 provides workers' compensation benefits for various "scheduled" occupational diseases. If a disease is not listed under the scheduled occupational diseases, it nevertheless is compensable if it satisfies the definition of an occupational disease. R.C. 4123.01(F) defines occupational disease as follows:
 "Occupational disease" means a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general."
In State ex rel. Ohio Bell Tel. Co. v. Krise (1975), 42 Ohio St.2d 247,327 N.E.2d 756, syllabus, the court stated that for a disease to qualify as an occupational disease, the employee must establish the following three criteria:
 "(1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."
Thus, for an occupational disease to be compensable, the employee first must demonstrate that the employee "contracted" the disease while in the course of employment. Brody, 72 Ohio St.3d at 82, 647 N.E.2d 778. To establish that the employee contracted the disease while in the course of employment, the employee "must demonstrate an injurious exposure in the course of his employment." Baechel v. Sears, Roebuck and Co. (1994),98 Ohio App.3d 365, 368, 648 N.E.2d 593 (citing State ex rel. Burnettv. Indus. Comm. (1983), 6 Ohio St.3d 266, 268, 452 N.E.2d 1341).
In Koons v. University of Akron (1992), 82 Ohio App.3d 94,611 N.E.2d 458, the court concluded that the employee failed to demonstrate that he contracted the disease, hypersensitivity pneumonitis, in the course of employment. In Koons, the employee worked in the university's heating/air conditioning department for approximately seven years. He discontinued his employment after experiencing recurrent breathing problems and filed a claim for workers' compensation. Initially, the employee was awarded workers' compensation benefits. The university appealed to the common pleas court which found in the university's favor. The appellate court agreed with the trial court's decision:
 "A review of the record in the case at bar indicates that [the employee] failed to establish a basic element of an occupational disease — that his lung condition was contracted arising out of and in the course of his employment. While the experts were able to identify hypersensitivity pneumonitis, they remained unable to identify the university's heating and cooling systems as the source of the disease."
Id., 82 Ohio App.3d at 96, 611 N.E.2d 458.
In Kellogg v. Mayfield (1991), 72 Ohio App.3d 490, 595 N.E.2d 465, the court rejected the employee's argument that pneumonia was an occupational disease. In Kellogg, the employee worked as a typist. She had a history of chronic pulmonary conditions, bronchitis, allergies, and bronchiectasis. She claimed that she contracted pneumonia as result of cold drafts and cigarette smoke in her workplace. The court of appeals disagreed with the employee that pneumonia constituted an occupational disease. The court stated that "the medical evidence indicates that appellant's condition was just as likely to result from conditions outside the workplace." Id., 72 Ohio App.3d at 492, 595 N.E.2d 465.
In Dixon v. The Kroger Co. (June 12, 1995), Athens App. No. 94CA1649, unreported, the court also concluded that the employee failed to establish that he had contracted an occupational disease. In Dixon, the employee had worked for Kroger for thirty-five years as a meat cutter. Part of the employee's daily duties involved wrapping meat. In 1989, the employee was diagnosed with myelogenous leukemia. The employee claimed that the plastic used to wrap the meat exposed him to benzene, which is known to be a cause of myelogenous leukemia. The employee's doctor stated that the condition could have been caused by the alleged exposure to benzene. Kroger argued, however, that no evidence existed that the employee had been exposed to benzene in the work place.
The court of appeals concluded that the employee "arguably" presented some evidence of exposure, but concluded that the employee could not establish the remaining two elements required for a disease to be considered an occupational disease. The court noted that no evidence existed regarding whether: (1) myelogenous leukemia was peculiar to the employee's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; or (2) the employment creates a risk of contracting myelogenous leukemia in a greater degree and in a different manner than in the public generally. The court noted that the employee's own doctor stated that about eighty percent of myelogenous leukemia cases have no known cause or origin.
In the case sub judice, we do not believe that appellant has demonstrated that he contracted an occupational disease. First, we note that the only evidence to support appellant's claim that he contracted pneumonia in the course of employment is in conclusory form. Moreover, appellant's expert admitted that it is not possible to pinpoint where one might contract pneumonia. With respect to the second criterion, the record contains no evidence that pneumococcal pneumonia is peculiar to appellant's employment or that the conditions of appellant's employment result in a hazard which distinguishes the employment in character from employment generally. Although appellant's expert states the "magic words" as contained in the statute, magic words alone are not sufficient to overcome a motion for summary judgment. See Kain v. Conrad (2000),139 Ohio App.3d 460, 463, 744 N.E.2d 245; see, also, Oswald v. Connor
(1985), 16 Ohio St.3d 38, 41, 476 N.E.2d 658.
Appellant also has failed to establish the third criterion — whether the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally. Pneumonia is a common illness to which the general public is exposed. See Kellogg,supra; see, also, Bewley v. Texas Employers Ins. Assoc. (Tex.Civ.App. 1978), 568 S.W.2d 208, 11 (stating that pneumonia is an ordinary disease of life to which the general public is exposed). Only appellant's expert's conclusory allegations suggest that appellant's employment created a risk of contracting the disease in a greater degree or in a different manner than in the public generally. Conclusory allegations are not sufficient to survive a properly supported motion for summary judgment. See Wolfe v. Little (Apr. 27, 2001), Montgomery App. No. 18718, unreported; see, also, Civ.R. 56(E) (requiring a party to respond with specific facts).
Moreover, we believe that to conclude that ordinary illnesses and colds constitute occupational diseases would extend the workers' compensation laws beyond their intended purpose.
"`It is not contemplated by the law makers that the law should cover health insurance. It is a matter of rather common knowledge that "colds," influenza and pneumonia are the result of bacteria — in common parlance, germs — attacking the body. These germs appear and cause epidemics in cities, towns, and counties. It is also a matter of rather common knowledge that many such germs appear to be in the very atmosphere surrounding us, at all times. Any and every person is "exposed" to them without being conscious of the fact. Medical science teaches that we fall victims of these germs because at the time of the attack we are not physically able to withstand their assaults.
[To allow compensation to an employee who claims that his work caused his immune system to become compromised], then every employee who is engaged in labor that actually tires the body and causes what the layman calls a "run-down condition" can recover compensation by showing that his work weakened him and lowered his resistance and caused him to succumb to the attack of any disease, which he would otherwise have been able to resist.'"
Bewley v. Texas Employers Ins. Assoc. (Tex.Civ.App. 1978),568 S.W.2d 208, 210-11 (quoting Amann v. Republic Underwriters
(Tex.Civ.App. 1937), 100 S.W.2d 778).
Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] We note that at least one court has suggested that whether an employee is subjected to greater stress than that to which all workers are occasionally subjected is a question of law. See Brody v. Mihm
(1995), 72 Ohio St.3d 81, 84, 647 N.E.2d 778.
[2] In Ryan, the court did not determine whether the employee suffered greater stress than that to which all workers are occasionally subjected. Instead, the court set forth the previously unrecognized rule that an injury resulting from mental or emotional stress may constitute a compensable injury within the meaning of the workers' compensation laws. The court remanded the case to the trial court for application of the new legal principles.