OPINION
Plaintiff-appellant Judith Mackell, the spouse of Gary R. Mackell, deceased, appeals from the June 13, 2001, Judgment Entry of the Coshocton County Court of Common Pleas granting the motion for summary judgment filed by defendants-appellees Armco, Inc., et al.
 STATEMENT OF THE FACTS AND CASE
Gary Mackell (hereinafter referred to as "Mackell") was employed by appellee Armco as a line operator at its steel processing plant. Appellee Armco, which operates its plant 7 days a week, 24 hours a day, maintained a shift rotation schedule that assigned every employee a shift rotation every week. The three shifts were from 7:00 a.m. to 3:00 p.m., from 3:00 p.m. to 11:00 p.m., and from 11:00 p.m. until 7:00 a.m. While appellee Armco permitted employees to trade shifts, prior supervisory approval of the trade was required.
During the weeks commencing on November 11, 1996, November 18, 1996, November 25, 1996, and December 2, 1996, Mackell worked from 7:00 a.m. to 3:00 p.m., which was the second shift. During such time, Mackell generally worked seven days a week. On December 8, 1996, Mackell worked the same shift. In addition, Mackell was also scheduled to work the third shift that evening from 11:00 p.m. until 7:00 a.m. According to his co-employees and wife, Mackell had problems adjusting to the sleep disturbances caused by working the third shift. For such reason, Mackell attempted to trade shifts with his usual trading co-worker. However, appellee Armco denied Mackell's written request for a shift trade because the co-worker with whom Mackell sought to trade shifts was being disciplined.
After working from 7:00 a.m. to 3:00 p.m. on December 8, 1996. Mackell, who lived approximately one hour from appellee's plant, then went home and slept between four and five hours. At approximately 10:47 p.m., Mackell reported for work and worked until 7:00 a.m. While driving his customary route home on December 9, 1996, Mackell's car left the road and hit a tree head on at approximately 50 MPH., causing Mackell to sustain severe injuries to his chest, face and leg. The accident occurred approximately 15 miles from appellee Armco's plant. The Deputy Sheriff who arrived on the scene and who investigated the accident concluded that Mackell, who later died of his injuries, had fallen asleep at the wheel and had driven directly into the tree without any attempt at braking. Alcohol was ruled out as a possible cause of the accident.
Subsequently, appellant, Mackell's wife, filed a claim with the Industrial Commission of Ohio for workers' compensation benefits on the basis that her husband was suffering from sleep deprivation at the time of the accident, that the sleep deprivation was a direct result of shift rotation and required overtime, and that sleep deprivation was the cause of the accident. After the claim was denied administratively at all levels, appellant, on July 17, 2000, filed a Notice of Appeal and a complaint with the Coshocton County Court of Common Pleas. Both parties subsequently filed motions for summary judgment.
As memorialized in a Judgment Entry filed on June 13, 2001, the trial court granted appellee Armco's motion for summary judgment while denying that filed by appellant. The trial court, in its entry, specifically held, in relevant part, as follows:
 Construing the evidence most favorably to the plaintiff, that evidence will still fail to establish in reasonable minds a causal relationship between any alleged "sleep deprivation" and the traffic accident which took Mr. Mackell's life. Even ignoring the issue of whether the plaintiff has sufficient competent testimony to support her theory that Mr. Mackell was sleep deprived, the claimant has offered no competent evidence that her husband was asleep when his car left the traveled portion of U.S. 36 and crashed into the trunk of a large tree. Specifically, the court finds that no "special hazard", as that term is used in MTD Products, Inc. v. Robatin (1991), 61 Ohio St.3d 66, is established by any of the documents filed to date . . .
 As the party resisting the motion for summary judgment, it is incumbent upon the claimant to produce evidence establishing that this injury both arose out of and occurred within the course of employment and that there is a direct and proximate causal relationship between the injury and the employment. Even the claimant's witness, Doctor Ronald J. Bloomfield, whom claimants will suggest should qualify as an "expert witness", cannot testify as to the cause of the accident. Thus, it is just as possible that Mr. Mackell drove the short distance off the road and into the nearby tree as a result of distraction or inattention (or from some other unknown cause) rather than as a result of being asleep. Obviously, if he was not asleep, the issue of whether he was "sleep deprived" is of no consequence.
 In this regard, the proposed testimony of an eye witness to the accident is of no consequence. That witness can testify as to what she saw, but not as to why those events happened. Further, the arguments of the claimant in her memorandum fail to establish that sleep deprivation meets the definition of an occupational disease or that it was contracted, if contracted at all, in the course of employment.
It is from the trial court's June 13, 2001 Judgment Entry that appellant now appeals, raising the following assignment of error:
 I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS THE EVIDENCE, WHEN CONSTRUED MOST FAVORABLY TOWARD THE PLAINTIFF, WOULD PERMIT A REASONABLE PERSON TO DRAW THE CONCLUSION THAT PLAINTIFF'S DECEASED HUSBAND, GARY MACKELL, HAD DEVELOPED THE CONDITION OF SLEEP DEPRIVATION AS A RESULT OF HIS EMPLOYMENT AND THAT SUCH CONDITION WAS THE PROXIMATE CAUSE OF HIS DEATH.
 II. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS THE EVIDENCE WHEN VIEWED IN ITS ENTIRETY PERMIT THE REASONABLE PERSON TO BUT ONE CONCLUSION AND THAT IS PLAINTIFF'S DECEASED HUSBAND, GARY MACKELL DIED AS THE RESULT OF A SPECIAL HAZARD OF HIS EMPLOYMENT.
 III. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE CONDITION OF SLEEP DEPRIVATION DID NOT MEET THE REQUIREMENTS OF AN OCCUPATIONAL DISEASE UNDER O.R.C. SEC. 4123.019(F) AND 4123.68 OR THE DEFINITION OF AN OCCUPATIONAL INJURY UNDER O.R.C. SEC. 4213.01(C).
 IV. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS THE EVIDENCE OF RECORD ESTABLISHES THAT A REASONABLE PERSON CAN COME TO ONLY ONE CONCLUSION AND THAT WAS THAT MR. MACKELL WAS SUFFERING FROM SLEEP DEPRIVATION AS [SIC] A RESULT OF HIS EMPLOYMENT WITH ARMCO AND THAT SUCH MENTAL/PHYSICAL CONDITION CAUSED HIS FATAL ACCIDENT.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ.R. 56(C) states in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresherv. Burt (1966), 75 Ohio St.3d 280.
It is based upon this standard we review appellant's assignments of error. For purposes of judicial economy, we shall address appellant's assignments of error out of sequence.
 III
Appellant, in her third assignment of error, argues that the trial court erred in holding that the condition of sleep deprivation does not meet the requirements for an occupational disease or injury. We disagree.
R.C. 4123.01(F) defines an "Occupational disease" as "a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general." In State ex rel. Ohio Bell Tel. Co. v. Krise (1975),42 Ohio St.2d 247, 327 N.E.2d 756, syllabus, the court stated that for a disease to qualify as an occupational disease, the employee must establish the following three criteria:
 "(1) The disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."
R.C. 4123.68 states, in relevant part, as follows:
 "The following diseases are considered occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section. A disease which meets the definition of an occupational disease is compensable pursuant to this chapter though it is not specifically listed in this section."
Since sleep deprivation is not a disease specifically enumerated in R.C. 4123.68, the definition of "occupational disease" set forth in R.C.4123.01(F) is applicable in the instant case.
We find that the trial court did not err in holding that sleep deprivation is not an occupational disease. Assuming, arguendo, that Mackell contracted sleep deprivation in the course of his employment with appellee, we find that appellant has failed to demonstrate that sleep deprivation is peculiar to Mackell's employment or that Mackell's employment created a risk of contracting the "disease" of sleep deprivation in greater degree and in a different manner from the public in general. See R.C. 4123.01(F). Dr. Robert Bloomfield, appellant's witness, testified as follows at his deposition:
 Okay. Now in your original report dated September 29th of `99 you opine that Mr. Mackell was sleep deprived prior to his accident. Do you know —
A. Yes.
Q. Define sleep deprivation as a medical term.
A. Lack of sleep, either partial or total.
 Q. Is this a particular diagnosis or is this just a description of symptomatology?
A. Both. There was a diagnosis and there is a description.
 Q. Aside from the obvious, is there any other treatment besides going to bed to treat sleep deprivation?
A. No. Sleep, correct, I agree.
See Deposition of Dr. Bloomfield at 33. As appellee notes in its brief, "lack of sleep" is not a condition peculiar to Mackell's employment by its causes or the characteristics of its manifestations. While not on point, we note that at least one court has held that pneumonia is not an occupational disease since it "is a common illness to which the general public is exposed." Ingram v. Conrad (Dec. 20, 2001), Athens App. No. 01CA36, unreported.[1] The court, in so holding, stated that "to conclude that ordinary illnesses and colds constitute occupational diseases would extend the workers' compensation laws beyond their intended purpose." Id. at 12. Likewise, since sleep deprivation is a condition commonly suffered by the general public, we find that it is not an occupational disease.
Appellant also contends that the trial court, in its entry, "totally ignored the fact that the Plaintiff's case is equally based on consideration of Mr. Mackell's death as a result of an accidental injury." Pursuant to R.C. 4123.01(C), "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. "Injury" does not include:
 (1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease;
 (2) Injury or disability caused primarily by the natural deterioration of tissue, an organ, or part of the body;
 (3) Injury or disability incurred in voluntary participation in an employer-sponsored recreation or fitness activity if the employee signs a waiver of the employee's right to compensation or benefits under this chapter prior to engaging in the recreation or fitness activity.
In order for an injury to be compensable, both prongs of the R.C.4123.01(C) test must be satisfied, that is, the injury must be sustained "in the course of" and "arising out of" the claimant's employment.Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277.
While appellant argues that sleep deprivation is an "injury", we disagree. Appellant, in support of her argument that sleep deprivation constitutes an injury, cites Ryan v. Connor (1986), 28 Ohio St.3d 406. The Supreme Court of Ohio, in Ryan, held "that a physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C)." Id. at 409. unreported. The Ryan court stated as follows:
 "* * * [I]n order for a stress-related injury to be compensable, the claimant must show that the injury resulted from "`greater emotional strain or tension than that to which all workers are occasionally subjected * * *.'"
 "Once a claimant has met this first test, he still must establish that the stress to which he (or claimant's decedent) was subjected in his employment was, in fact, the medical cause of his injury. In this regard, the claimant must show a substantial causal relationship between the stress and the injury for which compensation is sought. * * *"
Id., 28 Ohio St.3d at 409-410. When, as here, death benefits are sought, the claimant must show by a preponderance of the evidence that the claimant's decedent's death was "accelerated by a substantial period of time as a direct and proximate result of the * * * [stress]." Id. at 410, citing McKee v. Electric Auto-Lite Co. (1958), 168 Ohio St. 77, syllabus.
We concur with appellee that the facts in the case sub judice do not establish that Mackell's injury resulted from "greater emotional strain or tension than that to which all workers are occasionally subjected." Although appellant worked long hours, many workers are occasionally subjected to working long hours. See Ingram, supra. In addition, sleep deprivation, which is defined as lack of sleep, is occasionally suffered by many workers. While we have been unable to find any Ohio cases on point, we note that at least one state court has considered the issue of whether shift work maladaptation syndrome constituted an injury for workers' compensation purposes. In Metropolitan Edison Co. v. Workmen'sCompensation Appeal Board (1998), 718 A.2d 759, Stephen Werner, an employee who had performed rotating shift work for 21 years, sought worker's compensation benefits after he was diagnosed as suffering from "a constellation of symptoms referred to as shift work maladaptation syndrome". Among such symptoms were sleep disturbances. The Supreme Court of Pennsylvania, in holding that Werner was not entitled to workers' compensation benefits since shift work maladaptation syndrome was not an injury, stated, in part, as follows:
 Normal working conditions, in the nature of scheduling an employee to work a night shift, are not injuries for purposes of the Act merely because an employee undergoes physical or psychic reactions to those conditions. Although it is undisputed that Werner suffered from headaches, diarrhea and sleep loss, triggered by exposure to sunlight after working the midnight shift, the inquiry must focus upon whether the cause or stimulus of the physical complaints is an injury. Otherwise, all physical complaints would be considered injuries — an approach that has been rejected in psychic injury cases where the claimant suffered from physical ailments, as well as psychic problems in response to normal working conditions.
Id. at 764.
Since, based on the foregoing, appellant did not suffer an "injury" with the meaning of the workers compensation laws, appellant's third assignment of error is, therefore, overruled.
 II
Appellant, in her second assignment of error, contends that the trial court erred in holding that appellee's Armco's mandatory work schedule and denial of Mackell's requested trade shift with a co-employee did not create a "special hazard" so as to extend the zone of employment to Mackell's fatal accident.
The Workers' Compensation Act provides for compensation for injuries which occur both "in the course of" and "arising out of" an employee's employment. See R.C. 4123.01(C) and Fletcher v. Northwest MechanicalContr., Inc. (1991), 75 Ohio App.3d 466, 470. Pursuant to the "coming and going" rule, a fixed-situs employee who is injured while traveling to or from his place of employment is generally not entitled to participate in the workers' compensation fund because a causal connection does not exist between his injury and his employment to satisfy the "arising out of" requirement. See Ruckman v. Cubby Drilling, Inc. (1998),81 Ohio St.3d 117, 119, citing MTD Products, Inc. v. Robatin (1991),61 Ohio St.3d 66, 68.
There is no dispute that Mackell was a fixed-situs employee since he had a fixed place of employment. However, appellant, in the case subjudice, argues that the trial court erred in finding that the "special hazard" exception to the "coming and going" rule was not applicable. Under such exception, "a fixed-situs employee, injured while commuting to or from work, may demonstrate that his injuries `arose out of' his employment by showing that his travel served a function of his employer's business and created a risk that was distinctive in nature orquantitatively greater than the risk common to the general public duringcommutes." Barber v. Buckeye Masonry Constr. Co. (2001),146 Ohio App.3d 262, 271, (Emphasis added), citing Ruckman, supra., at 124. The "special hazard" rule is a test of causality only and does not address whether the employee was sufficiently "in the course of" his employment so as to satisfy R.C. 4123.01(C). See Ruckman, supra.
In Ruckman, the claimants, who were injured in traffic accidents during travel from their homes to remote drilling sites, sought to recover workers' compensation benefits. After finding that the claimants were fixed-situs employees, the Ohio Supreme Court considered the special hazard rule. The Ohio Supreme Court specifically held as follows in holding that the special hazard rule was applicable:
 In this case, multiple factors work in combination to make travel to the temporary drilling sites a special hazard of employment. Two such factors are the temporary nature and constantly changing location of the riggers' fixed work sites. Cubby regularly dispatched its employees over a three-state area for work assignments typically lasting somewhere between three and ten days. Unlike the typical fixed-situs employee, the Cubby riggers did not know the location of future assignments, and it was impossible for them to fix their commute in relation to these remote work sites. Cubby's customers determined the drilling sites and Cubby dispatched its employees to these locations without regard to the distance the riggers would need to travel. While Cubby paid a bonus to its employees based on how far they worked away from the company's Midvale base, under normal circumstances that bonus was minimal and did not contemplate overnight expenses. Instead, Cubby expected its workers to commute back and forth to the job site on a daily basis or arrange and pay for their own overnight accommodations.
 A third factor pertinent here is the distance of the riggers' commutes to the remote work sites. As a condition of their employment, Cubby required the riggers to report to work sites separated by significant distances, both from each other and from the Midvale home base. Although the riggers worked within an area of a one-day drive, that area was not so limited as to bring the riggers' travel to the varying work sites in line with work commutes common to the public.
 For most employees, commuting distance to a fixed work site is largely a personal choice. Any increased risk due a longer commute is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business. Accordingly, it usually is not the employment relationship that exposes an employee to the greater risk associated with a long commute. Moreover, the risks associated with highway travel are not distinctive in nature from those faced by the public in general. Here, however, the employment relationship dictates that the riggers undertake interstate and lengthy intrastate commutes, thereby significantly increasing their exposure to traffic risks associated with highway travel. Accordingly, because of the combination of all these factors, the riggers have established a risk quantitatively greater than risks common to the public.
Id. at 124-125. Based on the foregoing, the Ohio Supreme Court, inRuckman, held that the "arising out of" requirement of R.C. 4123.01(C) was met.
Upon our review of the record in this case, we find that the trial court did not err in holding that the evidence of record did not establish a "special hazard". Mackell's travel to and from work did not serve a function of appellee Armco's business but rather "is the same commute as undertaken by the general public and exposed [Mackell] to no greater risk than the general public." Barber, supra. at 272. Moreover, the risks posed by Mackell's travel during his commute were not "quantitatively greater than the risk common to the general public during commutes." Unlike in Ruckman, Mackell's work location was not constantly changing nor was he forced, at appellee's request, to travel long distances to work.
Accordingly, based on the foregoing, we concur with the trial court that Mackell was a fixed-situs employee whose injuries did not "arise out of" his employment. For such reason, we concur with the trial court that the "special hazard" exception to the "coming and going" rule is not applicable.
Appellant's second assignment of error is, therefore, overruled.
 I, IV
Based on the disposition of appellant's second and third assignments of error, the remaining assignments of error are moot.
Accordingly, the judgment of the Coshocton County Court of Common Pleas is affirmed.
By Edwards, J.
Gwin, P.J. and
Farmer, J. concurs
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Coshocton County Court of Common Pleas is affirmed. Costs to appellant.
[1] In Ingram, the claimant argued that due to the stressful situation of work, his body became run down and he contracted peneumonia.